IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BUDDY'S PLANT PLUS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 10-670 |
| v. | ) ) ) | Magistrate Judge Robert C. Mitchell |
| CENTIMARK CORPORATION, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Pending before the Court is Defendant's, CentiMark Corporation's, Motion for Summary Judgment [ECF No. 103]. The Motion, being fully briefed, is ripe for disposition. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

**II. FACTUAL BACKGROUND**

Plaintiff, Buddy's Plant Plus Corporation, ("Buddy's") is a Texas corporation that manufactures, "blends and bags fertilizers and other garden and lawn products for the Scott's Company (Miracle Gro)" in a Texas-based facility. Pl.'s Statement of Material Facts [ECF No. 123] at 11 ¶1. The facility used by Buddy's is "comprised of nine interconnected buildings and a separate office building."[1] *Id*. at ¶2.

On or about August 20, 2004, the buildings occupied by Plaintiff were damaged in a hail storm. Am. Compl. [ECF No. 85] at ¶8. The storm caused damage to Plaintiff's roofs, causing

---

[1] Plaintiff claims that all of the buildings, with the exception of one, are owned by Studer Rentals and leased to Buddy's. Pl.'s Statement of Material Facts [ECF No. 123] at ¶¶3-4. Buddy's claims that it owns the one building not owned by Studer Rentals. *Id*. at ¶4. Buddy's also insures the facility under a property damage insurance policy held by Republic Underwriters Insurance Company. *Id*. at ¶ 9.

1

them to leak. Pl.'s Statement of Material Facts [ECF No. 123] at ¶14. After attempting to repair the roofs in-house, Buddy's general manager, William Hunter, consulted with a sales representative from LaPolla, Inc., "a company that manufacture[s] various acrylic and other roof coating materials . . ." to inquire about repairing the roofs. *Id*. at ¶¶16-17. After Hunter and LaPolla's sales representative spoke regarding the condition and repair of the roof, LaPolla's sales representative contacted Defendant, CentiMark, to submit a bid for the project. Am. Compl. [ECF No. 85] at ¶9; Pl.'s Statement of Material Facts [ECF No. 123] at ¶¶17-23.

The parties disagree as to the nature of what was communicated between Hunter and LaPolla, and LaPolla and CentiMark. CentiMark alleges that LaPolla and Buddy's agreed, before LaPolla spoke to CentiMark about the project, that a certain acrylic coating manufactured by LaPolla was to be applied to the roof, and CentiMark was contacted merely to bid on the services of applying that coating. Br. in Supp. of Def.'s Mot. for Summ. J. [ECF No. 104] at 1. To the contrary, Buddy's alleges that it did not make a final decision regarding using LaPolla's acrylic coating, and CentiMark fraudulently persuaded Buddy's to use LaPolla's acrylic coating due to its waterproofing abilities. Am. Compl. [ECF No. 85] at ¶15-17. Buddy's alleges that CentiMark did so as recompense to LaPolla; it felt obliged to use LaPolla products because LaPolla informed CentiMark of the extensive project.[2] Pl.'s Statement of Material Facts [ECF No. 123] at ¶49.

Nevertheless, approximately ten months after the storm took place, on or about June 24, 2005, Defendant submitted to Plaintiff a proposal of services ("Proposal") to be rendered for the damaged roof. The Proposal indicated the use of a 10-year acrylic coating on all sections of the

---

[2] LaPolla, Inc. has never been a party to this action.

roof totaling $555,972.00.[3] 6/24/2005 Proposal [ECF No. 85-1 at 3]. The Proposal called for CentiMark to apply two coats of the "clear CentiMark Elastomeric Acrylic" to the Paper Goods and Parts Room roofing surface only. 6/24/2005 Constr. Spec. [ECF 85-1 at 8]. CentiMark was to install a base and top coat of RCS 500 Elastomeric Acrylic on the remainder of the roof. *Id*. The Proposal also included a Construction Specification document which explained in more detail the work to be performed by CentiMark. Included in the Construction Specification was a Warranty provision. It stated in pertinent part:

> Upon purchase of the roofing system, you become entitled to receive the benefits of a single source responsibility through CentiMark's comprehensive written warranty. This warranty protects your roof against defects in materials or workmanship. If your roof leaks at any time during the warranty period, we will provide complete warranty service.

*Id*. It also provided an exculpation of warranty clause which stated:

> CentiMark Corporation is not responsible for pre-existing conditions including, but not limited to: structural damage or deficiencies, clogged drains, mold growth, excessive standing water, removal of hazardous materials or other hidden deficiencies such as: damaged or leaking skylights, HVAC units/conduits, electrical or gas lines, re-calibration of satellite, lightning protection systems or landscaping. It is the building owner's financial obligation to provide corrective measures.

*Id*.

CentiMark then sent Buddy's a Sales Agreement, which Edward Studer, Buddy's President and Owner signed and returned to CentiMark on August 11, 2006. The Sales Agreement refers to and adopts the 6/24/2005 Proposal/Construction Specification and included a 10-year Warranty provision for the roofing system. The Sales Agreement indicated a bifurcated service/materials warranty stating: "CentiMark Labor/LaPolla Material Warranty."

---

[3] Specifically, the Construction Specification called for application of acrylic elastomeric coating system on sections of the roof including the lower roof, blending, compressor room, finished goods/storage, manufacturing, new section, paper goods, parts room, and the south roof section. 6/24/2005 Constr. Spec. [ECF No. 85-1 at 7].

3

8/11/2006 Sales Agreement [ECF No. 4-2 at 30]. Above the signature line signed by Studer is the provision:

> By my signature below, I certify that I have the authority to bind the purchaser and have had the opportunity to review the terms of this Agreement, *including those set forth on the reverse*. On behalf of the Purchaser, I understand and accept said terms and agree to be bound thereby. . . .

*Id*. at 30 (emphasis added).

The second page of the Sales Agreement included, inter alia, a choice of law provision, an integration clause, and a limitation of warranty provision. The choice of law provision stated: "Any disputes or actions relating to or arising out of the work to be performed pursuant to this Sales Agreement shall be exclusively governed by the laws of the Commonwealth of Pennsylvania." *Id*. at 16. The Sales Agreement's integration clause stated:

> The performance of the work contemplated by this Sales Agreement shall be governed solely by the terms and conditions stated herein, and no other terms and conditions, order acknowledgment or purchase order or any other documentation furnished by the customer shall be construed as an acceptance of any terms or conditions contained in such document which are inconsistent with the terms and conditions states herein, unless accepted in writing by a Corporate Officer of CentiMark.

*Id*. The limitation of warranty provision provided:

> The only warranty to be provided by CentiMark to Purchaser will be the CentiMark Corporation Non-Prorated Limited Warranty for the length of time stated on the face of this Sales Agreement, which terms and conditions shall govern all warranty matters between CentiMark and the Purchaser herein. To be valid, any changes to the Warranty must be specifically approved in writing by a Corporate Officer of CentiMark Corporation.

*Id*. CentiMark's Non-Prorated Limited Warranty was a separate document and provided that CentiMark warranted "ONLY that CentiMark [would] repair any leaks resulting from defects in the materials or workmanship in the roof services . . . performed by CentiMark" for the warranty

4

period. 11/08/2005 Non-Prorated Limited Roof Warranty I (a), [ECF No. 4-2 at 20]. The Sales Agreement also included a limitation of liability clause which stated: "This warranty does not cover, and in no case shall CentiMark be liable for any special, incidental or consequential damages based on breach of warranty, breach of contract, negligence, strict liability, tort or other legal theory." *Id*. at IV(b). Moreover, the Warranty included a disclaimer for all express or implied warranties:

> CENTIMARK EXPRESSLY DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES INCLUDING THE WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER IMPLIED WARRANTY. THIS EXPRESS LIMITED WARRANTY CONTAINS THE SOLE AND EXCLUSIVE WARRANTY AND REMEDY OF PURCHASER AGAINST CENTIMARK. THERE IS NO EXPRESS WARRANTY OTHER THAN THAT STATED IN THIS WARRANTY.

*Id*. at IV (a). The Warranty also contained a provision limiting the amount of time to bring a cause of action. The provision stated: "ANY ACTION BY PURCHASER TO ENFORCE ANY CLAIMS AGAINST CENTIMARK, MUST BE COMMENCED WITHIN ONE (1) YEAR FROM THE DATE THAT A DEFECT IN MATERIALS OR WORKMANSHIP, OR OTHER BREACH OR ANY OTHER CLAIM IS DISCOVERED OR REASONABLY SHOULD HAVE BEEN DISCOVERED." *Id*.

CentiMark commenced the project soon thereafter. On or about November 22, 2005, both Buddy's and CentiMark's representatives executed a CentiMark Job Completion Form ("Completion Form") associated with the work described in the Proposal and Sales Agreement. The Completion Form provided: "My signature below is the owner/purchaser's acceptance of the work performed by CentiMark and acknowledgment that the warranty(s) to be issued shall commence as of the job completion date shown above or on the face of the warranty, whichever

is later." 11/22/2005 Job Completion Form [ECF No. 4-2]. Buddy's paid CentiMark in two full installments on August 29, 2005 and December 13, 2005 as indicated in the Sales Agreement.

In December 2005, after CentiMark completed its project, the roof was experiencing leaks in multiple locations. Buddy's contacted CentiMark about the leaks, which CentiMark undertook many attempts to combat the leaks from December 2005 until this action was filed in November 2009. Buddy's admits that "[p]rior to the installation of the coating, the roof leaked in sporadic locations, but since the destructive work which CentiMark did in an effort to repair the leaks, the leaking occurs in defined patterns." Pl.'s Statement of Material Facts [ECF No. 123] at ¶258. CentiMark claims that "[t]he worst leaking is in the finished goods warehouse[,]" the building purportedly owned by Buddy's. *Id*. at ¶257. Buddy's states that to the present date, no action regarding the roof has been resolved and the roof still leaks. *Id*. at ¶253-62.

### III. PROCEDURAL HISTORY

Plaintiff originally filed the instant action in a Texas state court on November 3, 2009, which was removed to the Northern District of Texas. Defendant moved to dismiss for improper venue due to the venue selection clause contained in the contract. The Northern District of Texas determined that the venue selection clause naming Washington County, Pennsylvania as the forum was valid, and ultimately determined that transfer to the United States District Court for the Western District of Pennsylvania was proper. Order of 3/4/2010 [ECF No. 13] at 8; Order of 5/14/2010 [ECF No. 22] at 7-8. The Northern District of Texas Court also determined that the Sales Agreement incorporating by reference the other documents including the warranty provisions, and the executed Completion Form were valid and "not the product of fraud or overreaching; nor [did] it violate public policy or deprive a party of its day in court" and thus constituted a collective contract. Order of 3/4/2010 [ECF No. 13] at 7.

With leave of Court, Plaintiff filed a six-count Amended Complaint on April 9, 2012 claiming: (1) breach of express warranties; (2) breach of the implied warranty of fitness for a particular purpose; (3) breach of the implied warranty of merchantability; (4) breach of the warranty to perform in a workmanlike manner; (5) breach of contract; (6) fraudulent misrepresentation. Am. Compl. [ECF No. 85] at 6-8. Defendant filed a Motion for Summary Judgment, arguing: (1) Plaintiff's claims are governed by the terms of the contract and thus barred by the applicable limitations of liability and remedies; (2) Defendant adequately disclaimed all express and implied warranties; (3) Plaintiff has failed to establish a breach of contract by Defendant and a causal connection between any alleged breach and damages; (4) Plaintiff has failed to establish a claim for fraudulent misrepresentation in law or in fact and that the claim is barred by the integration clause, the parole evidence rule and the disclaimers and limitations in the contract. Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 104] at 12, 15, 18, 20.

## IV. JURISDICTION

This Court has diversity jurisdiction of this case under 28 U.S.C. §1332, as the parties are diverse and Plaintiff claims that the amount in controversy is in excess of the requisite jurisdictional amount. All parties have consented to jurisdiction to proceed before a United States Magistrate Judge.[4] Accordingly, this Court has the authority to decide dispositive motions and to eventually enter final judgment.

---

[4] Under the Federal Magistrate Judges Act ["Act"], a Magistrate Judge's jurisdiction may arise through the consent of the parties. 28 U.S.C. § 636(c). Under the Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Such a referral gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007). "[S]o long as consent [to Magistrate Judge jurisdiction] is clear and unambiguous, it is effective." *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d at 535; *Roell*, 538 U.S. at 591 (consent may be inferred from parties' actions). The instant matter was reassigned to

## V. FEDERAL RULE OF CIVIL PROCEDURE 56 STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x. 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [for Plaintiff] by clear and convincing evidence")).

## VI. ANALYSIS

   a. <u>Choice of Law</u>

CentiMark contends that the choice of law provision in the Sales Agreement controls and that Pennsylvania law applies to the entire contract and any claim relating to the subject matter of the contract.  In response, Buddy's contends that this Court should set aside the provision only as it applies to the tort claim of fraudulent misrepresentation and apply Texas law because the

---

Magistrate Judge Robert C. Mitchell on May 17, 2010.  Subsequently, all parties consented to Magistrate Judge jurisdiction. *See* Joint Consent to Jurisdiction by U.S. Magistrate Judge. [ECF No. 70].

provision applies only to contractual claims arising from the contract. This Court agrees with Defendant and finds that the Pennsylvania choice of law provision is valid and applies to any claim arising from the contract, including Buddy's tort claim for fraudulent misrepresentation.

In interpreting a choice of law contractual provision, a federal court exercising its diversity jurisdiction must apply the choice of law principles of the forum state, in this case, Pennsylvania. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *DL Res., Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 217 (3d Cir. 2007); *On Air Entm't Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000). "In contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions." *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. Ct. 2002).

In determining whether the choice of law provision applies to only contract claims or envisions encompassing all claims arising out of the contract and its performance, a court must determine based on the provision's "narrowness or breadth, whether the parties intended to encompass all elements of their association." *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F.Supp. 151, 157 (W.D.Pa. 1992). "Contractual choice of law provisions . . . do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Intern., Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F.Supp. 569 (E.D.Pa. 1994) (where provision was limited on its face to "this agreement" the contract did not contemplate to cover tort claims); *see also L.R. McCoy & Co., Inc. v. Beiler*, 2011 WL 925410 (E.D.Pa. March 16, 2011) (same); *Owen J. Roberts Sch. Dist. v. HTE Inc.*, 2003 WL 735098 (E.D.Pa. 2003) (same). Choice of law provisions that contemplate all matters relating to the subject matter of the contract applies to tort law claims arising therefrom. *See Composiflex, Inc.*, 795 F.Supp. at 155 (provision language applied to tort

claims where it stated "agreement shall be construed . . . as to all matters, including, but not limited to, matter of validity, construction, effect, or performance.").

Here, the choice of law provision is broad and encompasses tort claims arising from the contract. It is to be applied to actions "relating to" or "arising out of the work to be performed" and not merely that the "agreement shall be governed by the laws of Pennsylvania." Therefore, Pennsylvania law applies to both contract and tort claims arising from the contract.

    b. <u>Fraudulent Inducement and the Parol Evidence Rule</u>

As a general matter, where parties have a fully integrated written agreement, the parol evidence rule bars evidence of any representations made prior to the contract's execution. *Serino v. Prudential Ins. Co. of America*, 706 F.Supp.2d 584, 590-91 (M.D.Pa. 2009); *Rahemtulla v. Hassam*, 539 F.Supp.2d 755, 772-73 (M.D.Pa. 2008); *Haymond v. Lundy*, 2000 WL 804432, at *6-7 (E.D.Pa. June 22, 2000); *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982); *Gianni v. Russell & Co., Inc.*, 126 A. 791, 792 (Pa. 1924); *Union Storage Co. v. Speck*, 45 A. 48, 49 (Pa. 1899); *Hart v. Arnold*, 884 A.2d 316, 339-41 (Pa. Super. Ct. 2005). If a written agreement contains an integration clause, "the law declares the writing to not only be the best, but the only evidence of [the parties'] agreement." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). If a party claims fraud in the inducement to a fully integrated contract, "the parol evidence rule works to bar evidence of any representations made about any matter covered by the agreement prior to the contract's execution." *Rahemtulla*, 539 F.Supp.2d at 773 (citing *Hart*, 884 A.2d at 341). The Pennsylvania Supreme Court has succinctly summarized this point:

> [W]hile parol evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, i.e., that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, i.e., that an opposing party made false

>representations that induced the complaining party to agree to the contract.

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 205 (Pa. 2007) (internal citations omitted). *See also Hart*, 884 A.2d at 340 ("[A] party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations."). To find otherwise would make the parol evidence rule "a mockery, because all a party to the written contract would have to do to avoid, modify, or nullify [the contract] would be to aver (and prove) that the false representations were *fraudulently* made." *Bardwell v. Willis*, 100 A.2d 102, 104 (Pa. 1953) (emphasis in original).

Here, Buddy's is not arguing fraud in the execution, but rather that CentiMark made fraudulent representations regarding the waterproofing abilities of the elastomeric acrylic coating and, in doing so, induced Buddy's to enter into the contract. Buddy's does not aver that the waterproofing capabilities of the product was a term to be included in the contract and was fraudulently omitted. The contract contained an integration clause, stating that the performance of the work is governed solely by the terms and conditions as stated in the contract and no other terms or conditions apply. Had Buddy's intended for the waterproofing capabilities to become a term of the contract, "it should have insisted that the alleged representations made . . . be set forth in [the] integrated written agreements." *Rahemtulla*, 539 F.Supp.2d at 773. *See also Banks v. Hanoverians, Inc.*, 2006 WL 689106, *3 (Pa. Com. Pl. March 10, 2006) (plaintiff "should have protected himself by incorporating the representations upon which he now purports to rely" because the integration clause bars "any representations other than those expressly contained within the Agreement"). Therefore, applying the parol evidence rule, Buddy's is barred from asserting a claim of fraud in the inducement by arguing any evidence of prior promises, representations, assertions, omissions or agreements concerning the acrylic coating to nullify or

11

avoid the contract. Therefore, CentiMark is entitled to summary judgment on Count 6, the fraudulent misrepresentation claim.

      c. <u>Applicability of the Contract to the Uniform Commercial Code</u>

Buddy's also argues that CentiMark breached the implied warranties of merchantability and fitness for a particular purpose and express warranties that arise by operation of law under the Pennsylvania Uniform Commercial Code. This Court finds that the Pennsylvania Uniform Commercial Code does not apply because the predominant purpose of the contract was for services rendered by CentiMark, and therefore Buddy's is not afforded the implied warranties under the Pennsylvania Uniform Commercial Code, and as aforementioned, is barred by the parol evidence rule from asserting that any prior oral representations became part of the contract.

               *i. Mixed Goods and Services Contract*

The Pennsylvania Uniform Commercial Code ("U.C.C.") applies only to transactions in goods. 13 Pa.C.S.A.§ 2102; *Cucchi v. Rollins Protective Servs., Co.*, 574 A.2d 565, 570 (Pa. 1990). The U.C.C. defines a "good" as "all things . . . which are moveable at the time of identification to the contract for sale[.] . . ." 13 Pa.C.S.A. § 2-105. Thus, "in order to be a transaction in goods, the subject matter of the goods – the putative goods – must be tangible and moveable." *Cober v. Corle*, 610 A.2d 1036, 1039 (Pa. Super. Ct. 1992). "When the transaction involves predominantly the rendition of services, the fact that tangible, moveable goods may be involved in the performance of a contract does not bring the contract under the [C]ode." *Turney v. Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 840 (Pa. Super. Ct. 1999).

In determining whether a contract is predominantly for goods or services, the court is to "consider the purpose or essence of the contract. Comparing the relative costs of the materials supplied with the cost of labor may be helpful in this analysis, but not dispositive." *Advent Sys.,*

*Ltd. v. Unisys Corp.*, 925 F.2d 670, 676 (3d Cir. 1991) (applying Pennsylvania law). Other courts have similarly found useful the "language and circumstances surrounding the contract" and the "interrelationship of the goods and services to be provided (i.e., whether one is incidental to the other)." *KSM Assocs., Inc. v. ACS State Healthcare, LLC*, 2006 WL 847786 (E.D.Pa. March 30, 2006) (applying Pennsylvania law) (citing *Conopco, Inc. v. McCreadie*, 826 F.Supp. 855, 868 (D.N.J. 1993) (collecting cases)). See also *ESPJ Const. Corp. v. Schiavone*, 2008 WL 2663703 *5 (N.J. Super. July 9, 2008) (the pouring and setting of concrete was not a contract for goods, but rather services); *but see Cober*, 610 A.2d at 1040 (agreement for sale and erection of a pre-designed and pre-engineered steel building was a sale of goods where sales agreement was entitled "Purchase Agreement," referred to the parties as "Buyer" and "Seller" and contained many provisions that were routinely found in sales contracts including the risk of loss during transit and handling claims for shortages).

In deciding whether a contract for the construction of a new roof, or repair of an existing roof is considered a contract for goods and consequently within Article 2 of the U.C.C.'s domain, other courts have found that the "purchasing of roofing material [is] merely incidental to the dominant purpose of the contract: the installation of the roof." *Quality Guaranteed Roofing, Inc. v. Hoffman-La Roche, Inc*., 694 A.2d 1077, 1079 (N.J. Super. 1997). As such, "[t]he goods aspect of the contract, the roofing materials, were simply to foster the dominant purpose of the contract, to wit, the construction of a new roof." *Id*.

Similarly, the Michigan Court of Appeals held that the removal of an old roof and subsequent installation of a new roofing system "was predominantly one for services, rather than one for a sale of goods" and the warranty provisions of the U.C.C. did not apply. *Frommert v. Bobson Constr. Co*., 558 N.W.2d 239, 240 (Mich. Ct. App. 1996). The court explained:

> In this case, it is difficult to conceive of the goods being supplied, the roofing material, as the predominant purpose of the contract. That is, plaintiff needed to have a new roof installed, and the service of removing the old roof and replacing it with the new roofing system was clearly the predominant purpose of the contract.
>
> Further, the contract itself is specifically identified as a "home improvement and installment contract" and defendant is referred to as a contractor in the contract. Defendant essentially undertook to remove and replace a leaky roof. The goods were merely incidental to the purpose of the contract. Plaintiff was not contracting to purchase roofing material only, because the goods would have been of no value unless they were installed.

*Id*. at 240-41. The Texas Court of Appeals has also held that where the contract was for the installation of a roof, "[t]he essence or dominant factor of the transaction . . . was the furnishing of the labor to install the roof[,]" and thus the contract was one for services and Article 2 of the U.C.C. did not apply. *Montgomery Ward & Co. v. Dalton*, 665 S.W.2d 507, 510 (Tex. Civ. App. 1983).

Considering this case in light of the foregoing persuasive authority, there is not sufficient evidence of record present that supports the contract entered into between Buddy's and CentiMark was a contract for goods. Although the cases dealt with the construction or repair of a new or existing roof, the underlying presumptions regarding service contracts are invariable. The evidence supports that the predominant purpose of the contract was for services, namely the installation of an elastomeric acrylic coating, which would be of no use or value to Buddy's by itself had it not been installed by CentiMark. Moreover, the Sales Agreement, Proposal and Construction Specification outline that CentiMark is to "furnish" and "install" the roofing system, and allocates the warranties provided by CentiMark for "labor" and by LaPolla for "materials." The elastomeric acrylic coating, along with all of the other materials used were incidental to the predominant purpose of the contract, which was the installation of a new roofing

system at Buddy's. Therefore, Article 2 of the U.C.C. does not apply and Defendant is entitled to summary judgment for Count I, breach of express warranty[5], Count II, breach of warranty for fitness for a particular purpose, and Count III, breach of the implied warranty of merchantability.

      d. <u>Statute of Limitations</u>

CentiMark argues that an action claiming defect in workmanship or other breach of contract is barred due to the one year limitations period provided in the contract. Buddy's contends that a breach of the warranty only became obvious in 2009 and its Complaint was timely filed. Def.'s Op. Br. [ECF No. 132] at 15. This Court finds that although the one year limitation provision is valid, whether Plaintiff was reasonable in discovering its injury is a question of fact for the jury to determine.[6]

Under Pennsylvania law, a written agreement prescribing a "shorter time [than the statutory limitations period] which is not manifestly unreasonable" is valid. 42 Pa.C.S.A. § 5501(a); *Lardas v. Underwriters Ins. Co*., 231 A.2d 740, 741 (Pa. 1967) (expressly approving such provisions). Thus, a contract provision limiting the time in which a party can bring suit under the contract is effective if reasonable.

Here, the Limited Roof Warranty included a provision that limited bringing a claim for a breach or defect in materials or workmanship within one year of Buddy's discovering or when

---

[5]     Plaintiff mischaracterizes Count I, breach of express warranties as a claim arising under Article 2 of the U.C.C. As previously stated, Article 2 and its causes of action for breach of warranties does not apply, and moreover, Plaintiff is barred by the parol evidence rule and cannot assert that any oral assertions become part of the contract, therefore Plaintiff is limited to a breach of contract action on the warranty. As such, Defendant is entitled to summary judgment on Count I, breach of express warranties.

[6]     Although neither party has explored whether the repair doctrine tolled the statute of limitations in the instant case, this Court also determines that CentiMark's attempts at repairing the roof would not have tolled the one year statute of limitations imposed in the contract. The repair doctrine is essentially an estoppel theory that requires the existence of "an act (in this case, the attempted repairs), a representation (in this case, that the repairs would cure the defect), and reliance upon the representation." *Amodeo v. Ryan Homes, Inc*., 595 A.2d 1232, 1237 (Pa. Super. Ct. 1991). There is no evidence of record that CentiMark made representations that the repairs would correct the leaking roofs; therefore the repair doctrine does not apply. *See Ranker v. Skyline Corp*., 493 A.2d 706, 709 (Pa. Super. Ct. 1985).

Buddy's reasonably should have discovered the breach. This provision is reasonable and does not flout the 10-year warranty given by CentiMark because it merely limits the amount of time after a breach occurs in which Buddy's had to commence suit. Moreover, both parties are sophisticated business entities with equal bargaining power. Therefore, because the provision is reasonable, it must be determined whether the amount of time it took Buddy's to discovery the breach was reasonable and whether suit was filed within one year of that time period.

The Pennsylvania Supreme Court has recently surveyed the applicable case law surrounding the discovery rule. *Wilson v. El-Daief*, 964 A.2d 354 (Pa. 2009). In *Wilson*, the Pennsylvania Supreme Court stated:

> [A] cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. In certain cases involving latent injury and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been injured and that her injury has been caused by another party's conduct. . . . [T]he determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore ordinarily is a question for a jury to decide. However, courts may resolve the matter at the summary judgment stage where reasonable minds could not differ on the subject. . . . The party relying on the discovery rule bears the burden of proof.

*Id*. at 361-62 (citations omitted). Most Pennsylvania courts have applied a "reasonable-diligence requirement" compelling the plaintiff to establish that it exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Cochran*, 666 A.2d 245, 249 (Pa. 1995) (citations omitted). *See also Fine v. Checcio*, 870 A.2d 850 (Pa. 2005); *but see Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997) ("The very essence of the discovery rule in Pennsylvania is that it

applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury.").

In the instant case, the applicable limitations period is one year after the breach or injury had been or should have been discovered. Buddy's filed the instant action on November 3, 2009. However, whether Buddy's was diligent and reasonable in discovering its injury is a jury determination. Whether the acts of CentiMark continuing to fix the roof for a period spanning four years after the Job Completion Form was executed, prevented Buddy's from discovering any injury is a question of fact examining Buddy's reasonableness in its discovery of its injury. Therefore, if a jury finds that it was reasonable for Plaintiff to discover the breach of contract at a time before November 3, 2008 (one year prior to the action's commencement), the complaint is untimely and Defendant will be entitled to judgment as a matter of law as to Counts IV and V at that time. In the alternative, if the jury believes Plaintiff's contention that it did not discover the breach until a time on or after November 3, 2008, Plaintiff's complaint was timely filed.

      e. <u>Breach of Contract</u>

CentiMark argues that Buddy's has not established a breach of contract because CentiMark fulfilled its obligations to install the roofing system and Buddy's executed the work Completion Form attesting the work under the contract was complete. It further argues that the Limited Non-Prorated Roofing Warranty "obligated CentiMark to perform repairs if – and only if – the roof leaked **because** of defects in materials or workmanship." Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 104] at 18 (emphasis in original). CentiMark contends that stopping the roof from leaking was not CentiMark's obligation under the contract.

"A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the

17

contract; and (3) resultant damages." *Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 764 A.2d 1106, 1109 (Pa.Super. 2000). The underlying policy of Pennsylvania contract law is to "protect the parties' expectation interests by putting the aggrieved party in as good a position as he would have been had the contract been performed." *Id.*; *Trosky v. Civil Serv. Comm'n*, 652 A.2d 813, 817 (Pa. 1995).

In the instant case, absent from the contract is any express term that creates a duty of CentiMark to repair or stop the leaks on Buddy's roofs. The contract merely creates the obligation of CentiMark to install the elastomeric acrylic coating. However, "[w]here a contract contains an express warranty to remedy defects due to faulty workmanship or materials appearing within the specified time, [that party] is responsible for defects resulting from such causes which appear within the warranty period and is required to make good his warranty according to its terms, although not for defects arising after the warranty period has elapsed." *Brandywine Area Joint Sch. Auth. v. Van Cor, Inc.*, 57 Pa. D. & C.2d 606, 616 (1971). "Attempted but ineffectual efforts to make repairs will not satisfy [the warranty]" *Id*. In addition, accepting a completed project does not waive imperfections in the construction and workmanship that are inherently latent and could not have been revealed upon reasonable inspection. *Abram Singer Sons, Inc. v. DeStefano*, 17 Pa. D. & C.2d 606 (1971).

CentiMark's warranty provides that it will repair "any leaks resulting from defects in the materials or workmanship in the roof services . . . performed by CentiMark." 11/8/2005 Non-Prorated Limited Roof Warranty [ECF No. 4-2] at 20. CentiMark claims that the leaks did not result from its faulty workmanship and the leaks were present before it installed the coating. Buddy's claims that the materials and/or workmanship employed by CentiMark were defective in some way and contributed to the leaks on the roof. Whether the leaks were caused or

exacerbated by the faulty materials or workmanship, so as to create an obligation on CentiMark's behalf to correct its workmanship or be liable for damages is a question of fact to be determined by a jury. Further, whether CentiMark expounded that duty to repair is a material issue of fact. Therefore, CentiMark is not entitled to summary judgment on the breach of warranty provision and the duty to perform in a workmanlike manner.

      f.  <u>Limitation of Liability</u>

To determine the validity of a limitation of liability provision, Pennsylvania courts "look to the parties involved to ensure there is no disparity between the entities in either bargaining power or sophistication." *Carll v. Terminix Int'l Co.*, 793 A.2d 921, 924-25 (Pa. Super. Ct. 2002) (citing *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1190 (Pa. Super. Ct. 1991)). The Pennsylvania Superior Court has recognized that "in a commercial setting, a contractual provision limiting warranties, establishing repair or replacement as the exclusive remedy and excluding liability for special, indirect and consequential damages is generally valid and enforceable." *Carll v. Terminix Int'l Co.*, 793 A.2d 921, 924-25 (Pa. Super. Ct. 2002) (citing *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919 (Pa. Super. Ct. 1989)).

Here, both parties to the contract were indeed informed, sophisticated corporations and not merely consumers. Therefore, the limitation of liability clause is enforceable against Buddy's, and should it recover on its breach of contract claim, CentiMark is not liable for any special, incidental or consequential damages.

**VII.  CONCLUSION**

For the above stated reasons, Defendant's, CentiMark's Motion for Summary Judgment [ECF No. 103] is granted in part and denied in part. Summary Judgment is granted as to Count

I: Breach of Express Warranties, Count II: Breach of Implied Warranties, Count III: Breach of Implied Warranty of Merchantability and Count VI Fraudulent Misrepresentation. Summary Judgment is denied as to Count IV: Breach of the Warranty to Perform in a Workmanlike Manner and Count V: Breach of Contract. Likewise, should Buddy's recover, CentiMark is not liable for any special, incidental or consequential damages. An appropriate Order will be entered.

Dated: January 16, 2013

                                                   By the Court,

                                                   s/Robert C. Mitchell
                                                   Robert C. Mitchell
                                                   United States Magistrate Judge

cc:      All attorneys of record via CM-ECF