IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BUDDY'S PLANT PLUS )
CORPORATION, )
        Plaintiff, )     Civil Action No.  10-670
 )
   v. )
 )     Magistrate Judge Robert C. Mitchell
CENTIMARK CORPORATION, )
        Defendant. )

## MEMORANDUM OPINION

ROBERT C. MITCHELL, Magistrate Judge.

## I.    INTRODUCTION

    Before the court are the parties' motions in limine in the instant breach of contract case.[1]

As the motions are fully briefed and a hearing on the motions was held on October 1, 2013, the

matters are ripe for disposition.

## II.    BACKGROUND

    This case concerns an allegedly defective roof coating system (specifically an elastomeric

acrylic coating manufactured by Lapolla, Inc.) installed by Defendant, CentiMark Corporation

("CentiMark") at Plaintiff's, Buddy's Plant Plus Corporation ("Buddy's") facilities.[2]  After a hail

storm struck Buddy's facilities, Buddy's claims their roof began to leak.  CentiMark was

contacted to bid the job.  It is disputed as to how CentiMark became involved in the roofing

project and whether CentiMark recommended installing the elastomeric coating to fix the leaks

---

[1]    Before the court are Plaintiff's motions in limine [ECF Nos. 170 and 174] and Defendant's motions in limine [ECF Nos. 176, 178, 180, 182, 184, 186, 188, 192, 194].  Plaintiff's motion in limine [ECF No. 172], and Defendant's eighth motion in limine [ECF No. 190] were voluntarily withdrawn by the parties.

[2]    For a full account of the facts of this case, see this court's memorandum opinion and order granting in part and denying in part Defendant's motion for summary judgment issued January 16, 2013. [ECF No. 157].

in the roof. Buddy's claims that it was approached by CentiMark and CentiMark represented that the elastomeric coating would effectively remedy Buddy's leaks. CentiMark counters that Buddy's was a Lapolla customer before the leaks even occurred and a Lapolla agent had recommended that the elastomeric coating be applied. CentiMark claims that Buddy's made the decision to install an elastomeric coating before CentiMark and Buddy's were even in contact with one another. CentiMark claims that it was not its responsibility to choose or suggest the roofing system to be installed, but only to bid and install the elastomeric acrylic coating chosen by Buddy's.

In August 2005, CentiMark installed the elastomeric coating, and a ten year warranty was given for materials and services. After the application of the coating, Buddy's reported that the leaks continued. CentiMark attempted to repair the leaks, but Buddy's claims that the roof still leaks, and reports that it leaks more after the repairs were completed by CentiMark. Buddy's then filed the instant action.

The claims that remain are a breach of contract for failure to apply a waterproofing material and for defective repairs under the warranty provision and a breach of the implied duty to perform in a workmanlike manner. Buddy's claims that CentiMark breached the contract by not installing a waterproof material, a term of the contract, and that the elastomeric coating is not a waterproofing material. Buddy's further claims that CentiMark breached the warranty by failing to repair the leaks that occurred after applying the coating. Lastly, Buddy's claims that CentiMark further damaged the roof beyond repair when it tried to repair the roof by drilling ungasketed screws through the roof, causing more leakage. As a consequence, Buddy's alleges that the entire roof needs to be replaced.

CentiMark defends against these claims by arguing that although the elastomeric coating

has waterproofing capabilities, it was not to be used as Buddy's contends, *i.e.*, to create a watertight roof, and Buddy's knew this before it signed the contract. CentiMark further claims that it properly installed the coating and the materials were proper for the job completed. CentiMark contends that the coating failed because Buddy's buildings were negligently designed and/or constructed such that they expand and contract with the elements, allowing condensation to enter the roof and cause the leaks. Further, CentiMark claims it was under no duty to provide engineering expertise prior to applying the coating and expressly disclaimed this in the contract. CentiMark also argues that the entire roof does not need to be replaced, as Buddy's claims, but rather, it can be repaired.

## III. DISCUSSION

The parties raise a variety of motions in limine that the court will address in turn.

### A. Plaintiff's Motions in Limine

#### 1. Plaintiff's Motion to Preclude CentiMark from Arguing or Introducing Evidence that an Alleged Defect in the Construction of the Roof and Laps on the Plaintiff's Facility Caused CentiMark's Repairs to Fail [ECF No. 170]

Buddy's first moves to preclude CentiMark from arguing or offering evidence that a defect in the construction of Buddy's facility, specifically, the roof end laps, caused CentiMark's repairs to fail. Pl.'s Br. in Supp. of Mot. in Limine [ECF No. 171] at 1. Buddy's claims that Mike Gainor, a CentiMark employee found no "pre-existing" conditions on Buddy's roof when he conducted a pre-job inspection. Buddy's argues that CentiMark should be estopped from introducing any of the aforementioned evidence because "CentiMark's misrepresentation that the roof was in such a condition so as to allow CentiMark's repairs to be effective induced Buddy's to authorize repairs." *Id.* at 8.

CentiMark responds that Buddy's has not properly alleged estoppel because "(1)

CentiMark did not use misleading words, conduct or silence against Buddy's; (2) Buddy's had no right to rely upon CentiMark's inspection, which inspection was intended only to produce a proposal to perform specific tasks for a specific price; and (3) because Buddy's had a duty to further investigate the structural defects in its roof, which duty it failed to satisfy." Def.'s Resp. to Pl.'s Mot. in Lim [ECF No. 224] at 2-3. CentiMark also argues

> With respect to any alleged duty in CentiMark to discover structural defects and alert Buddy's to them, no such duty lies in this case – neither contractually nor at common law. Buddy's cannot unilaterally impose such duties upon CentiMark because CentiMark did not agree to undertake them, and in fact, CentiMark expressly disclaimed responsibility for both discovering defects and alerting Buddy's to them.

*Id*. at 3.

The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pgh. Bd. of Educ*., 913 F.2d 1064, 1069 (3d Cir. 1990). Contrarily, a motion for summary judgment is "designed to eliminate a trial in cases where there are no issues of fact." *Id*.

Primarily, equitable estoppel is an affirmative defense, not an independent basis to support a motion in limine. *See Bair v. Purcell*, 500 F.Supp.2d 468, 491, (M.D.Pa. 2007) ("equitable estoppel is raised as an affirmative defense or as a ground to prevent a defendant from raising a particular defense, it cannot be pleaded as a separate cause of action."). Such argument is appropriate for a summary judgment motion, not at this juncture. Moreover, Buddy's provides no basis under the Federal Rules of Evidence as to why CentiMark should be barred from introducing such evidence and testimony. The Court otherwise finds that the evidence is relevant and admissible under the Federal Rules of Evidence.

Accordingly, Plaintiff's Motion in Limine [ECF No. 170] is denied.

2. *Plaintiff's Motion to Exclude the Expert Testimony Concerning Condensation of the Roof [ECF No. 174]*

Next, Buddy's seeks to preclude CentiMark's civil engineer, Brian Neal Jaks from testifying as to condensation on Buddy's roof. Buddy's claims that under Federal Rule of Evidence 702 pertaining to expert testimony that Jaks' testimony should be excluded because he "is not qualified to testify that condensation caused the water damage to Buddy's building because he has no experience in dealing with condensation issues, his opinion is not sufficiently reliable[,] and his opinion has no valid scientific connection to the facts of the case." Pl.'s Mot. in Lim. [ECF No. 174] at 3.

Specifically, Buddy's claims that Jaks is not qualified as an expert as "he has no prior knowledge, skill, experience, training or education to testify regarding the existence of condensation in a metal building." Br. in Supp. of Pl.'s Mot. in Lim. [ECF No. 175] at 2. Additionally, Buddy's argues that Jaks did not test the humidity or temperature and made no determination of the dew point. *Id.* at 5. Buddy's argues that his testimony is unreliable because it is based on subjective belief rather than methods and procedures of science. *Id.* at 9.

CentiMark responds that Jaks is sufficiently qualified as he

> is highly education, licensed as a professional engineer in 14 states, and has been involved with designing, testing and inspecting over 220 metal roofs during his 18 years as a civil engineer in the metal roofing industry. He personally visited and inspected Buddy's roofs in 2009 and 2011. During his visits, he personally observed the evidence of condensation about which he opines. . . . [H]e [also] studied thermodynamics with mechanical action or relations of heat on materials, *i.e.*, condensation.

Def.'s Resp. to Pl.'s Mot. in Lim. [ECF No. 225] at 2-3. Additionally, Buddy's own civil engineering expert "reviewed Mr. Jaks' opinion on condensation and neither disagreed with Mr. Jaks' conclusion nor challenged Mr. Jaks' qualifications or methodology." *Id.* at 2.

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:
> > (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reasonably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The United States Supreme Court under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., gave district courts the "authority to determine the threshold of reliability and relevance of expert testimony." *Perlman v. Universal Restoration Sys., Inc*., 2013 WL 5278211, at *6 (E.D.Pa. Sept. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579 (1993)).  Under *Daubert*, district courts conduct a preliminary examination of the reliability of the expert testimony based upon whether

> (1) the theory or technique employed by the expert is scientific knowledge that will assist the trier of fact, (2) the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, and the existence and maintenance of standards for controlling the technique's operation, and (4) the general acceptance of the theory or technique.

*Perlman*, 2013 WL 5278211, at *7 (citations omitted).  This list is not exhaustive nor is it applicable in every case. *Kannankeril v. Terminix Intern., Inc*., 128 F.3d 802, 806 (3d Cir. 1997). An expert's justifications for his opinions need not be perfect, but merely "good," and "[a] judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate." *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir. 1994).    "[A]n expert's testimony is admissible so

long as the process or technique the expert used in formulating the opinion is reliable." *Id.* at 742

(citing *Daubert*, 509 U.S. at 589). Moreover, Rule 702 is not to be used as an exclusionary rule,

but is "meant to instruct the district courts in the sound exercise of their discretion in making

admissibility determinations." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir.

1996).

Jaks is a sufficiently qualified expert under Federal Rule of Evidence 702. He has been

licensed as a professional engineer in fourteen states, and has been "involved with designing,

testing and inspecting over 220 metal roofs during his [eighteen] years as a civil engineer in the

metal roofing industry" and has specifically studied thermodynamics. Def.'s Resp. to Pl.'s Mot.

in Lim. [ECF No. 225] at 2. Moreover, he has visited the site and conducted sufficient tests to

support his expert opinion. Because the Court takes a "liberal approach" in admitting expert

testimony, Plaintiff's argument regarding Jaks' qualifications "relate more to the weight to be

given" to his testimony, rather than to its admissibility. *Holbrook*, 80 F.3d at 782. "[W]itnesses

may be competent to testify as experts even though they may not . . . be the 'best' qualified.

Who is 'best' qualified is [a] matter of weight upon which reasonable jurors may disagree." *Id*.

Moreover, Buddy's own expert does not challenge Jaks' opinions.

Accordingly, Plaintiff's Motion in Limine [ECF No. 174] is denied.

## B. Defendant's Motions in Limine

### 1. Defendant's Motion to Exclude Evidence, Argument and Testimony Irrelevant to the Limited Issues Before the Court [ECF No. 176]

Defendant seeks to preclude Plaintiff from introducing evidence or testimony that does

not directly bear upon the issues not before the Court including the statute of limitations issue,

the breach of contract and warranty claim regarding the causation of leaks and adequacy of

repair because it is not relevant under Federal Rule of Evidence 401.[3] Def.'s Mot. in Lim. [ECF No. 176] at 2-4. Specifically, Plaintiff seeks to preclude "alleged improper selection or design of the coating system, alleged misrepresentations about the waterproofing characteristics of the coating system or fraudulent inducement to purchase the system, and allegations that CentiMark had a duty to stop the roof from leaking independent of a defect in CentiMark's materials or workmanship." *Id*. at 2.

CentiMark argues:

> In terms of relevancy, the only witnesses with relevant testimony to offer would be expert witnesses. Those witnesses are the only ones with knowledge that could be instructive to the jury on matters such as when Buddy's should have reasonably discovered it had a claim against CentiMark. This is especially true for the issues of whether an aspect of CentiMark's materials or workmanship was defective, and whether such defect *caused* leakage at Buddy's roof. Representations and negotiations prior to signing the contract are of no consequence in determining whether the contract, itself, was breached. Since CentiMark was not required . . . to "design" a roof, and explicitly disclaimed responsibility for doing so, it is irrelevant that Buddy's believes the design of the system was faulty, or that it was improper to apply an elastomeric coating to a roof of this type. Statute of limitations, defective materials or workmanship (not design or selection), causation, and adequacy of repairs (only if it is determined that the materials or workmanship was defective) are the only things the [jury] needs to consider.

Def.'s Br. in Supp. of Mot. in Lim [ECF No. 177] at 3-4 (emphasis in original). CentiMark also argues that such evidence is more prejudicial than probative under Federal Rule of Evidence 403 because it is improper to offer evidence in support of a claim that has been dismissed on summary judgment. *Id*. at 4.[4]

---

[3]     Federal Rule of Evidence 401 states in pertinent part: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

[4]     Federal Rule of Evidence 403 states: "The court may exclude relevant evidence if its probative value is

Buddy's responds that it is not offering evidence seeking to nullify or avoid the contract contrary to the parol evidence rule, but rather, seeks to enforce the contract as it was proposed and accepted by Buddy's. Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 207] at 2. Buddy's argues that the proposal submitted by CentiMark stated specifically that it would spray a "waterproofing material" on the roof. *Id.* Further, CentiMark's employee who prepared the proposal, Mike Gainor, testified that the "waterproofing material" was the acrylic elastomeric coating ultimately used at Buddy's facility. *Id.* Thus, CentiMark was obligated under the contract to apply a waterproofing material to the roof. *Id.* Buddy's alleges that the contract was breached because it did not apply a waterproofing material and it is entitled to offer evidence as to the intent of the contract because the "specific representation in the contract that CentiMark would apply a waterproof material to the roof demonstrates the purpose of the contract that CentiMark repair the leaks caused by the hail storm." *Id.* at 3. Plaintiff also argues that it does not seek to offer evidence that "CentiMark breached some alleged duty to Buddy's in 'selecting' the coating system that was applied to the roof.' Buddy's will prove, however, that CentiMark <u>did</u> select and propose the coating that was applied to the roof." Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 206] at 2 (emphasis in original).

Preliminarily, Buddy's evidence regarding whether CentiMark installed a "waterproofing material" is relevant to determine whether CentiMark breached the contract. However, because CentiMark seeks to preclude a broad array of evidence regarding the remaining claims, these objections are better determined in the context of trial and some are addressed more specifically *infra*.

Accordingly, CentiMark's motion in limine [ECF No. 176] is denied without prejudice.

---

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 2. Defendant's Motion to Exclude the Expert Testimony and Report of Kirby Hartman [ECF No. 178]

CentiMark next seeks to preclude the expert testimony and report of Kirby Hartman to the extent that he will "opine on his estimate of the cost to completely replace the roof at Buddy's – a consequential damage disclaimed by the warranty and excluded by the Court." Def.'s Mot. in Lim. [ECF No. 178] at 1. CentiMark argues that Buddy's may only recover actual damages for its alleged injuries, "which compensate an injured party for an immediate injury or loss sustained. [CentiMark argues i]n this case, this would be the cost to repair the coating system installed by CentiMark to a condition consistent with the terms of the contract" and not for an entirely new roof. *Id*. at 2.

Buddy's argues that the amount of the cost to replace the roof is relevant because CentiMark, in trying to repair the roof, caused serious additional damage to the roof and replacement is the only remedy. Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 209] at 3.

The limitation of liability clause stated "This warranty does not cover, and in no case shall CentiMark be liable for any special, incidental or consequential damages based on breach of warranty, breach of contract, negligence, strict liability, tort or other legal theory." 8/11/2006 Sales Agreement [ECF No. 4-2] at 30. The court upheld this provision as valid; however it does not bar Buddy's from bringing evidence of damages actually caused by CentiMark. *See* Mem. Op. and Order [ECF No. 157] at 19. The replacement of the roof is not a consequential damage if the repairs made by CentiMark caused such substantial damage to the roof that the only replacement of the entire roof would remedy the defects. Therefore, Buddy's is entitled to recoup actual damages sustained, provided they can be proven and are accepted by the jury.

Accordingly, CentiMark's Motion in Limine [ECF No. 178] is denied.

### 3. Defendant's Motion to Exclude Irrelevant Expert Testimony [ECF No. 180]

CentiMark next seeks exclusion of any testimony or evidence pertaining to Buddy's expert's opinions that some act or omission by CentiMark caused Buddy's roofs to leak because it is irrelevant. Def.'s Br. in Supp. of Mot. in Lim [ECF No. 181] at 2-3. CentiMark argues that under the contract, only it can determine whether the leaks in the roof were caused by defects in its materials and workmanship. *Id*. at 3.

Buddy's replies that this is the first time that CentiMark has raised this contractual provision, claiming it solely has the right to determine whether a breach occurred. Pl.'s Resp. to Def.'s Mot. in Lim [ECF No. 211] at 1.

The Court finds that evidence or testimony of an act or omission of CentiMark that caused Buddy's roof to leak is relevant to determine whether CentiMark breached its duty to perform the contract in a workmanlike manner and whether it breached the contract to repair any defects from materials and/or workmanship.

Accordingly, CentiMark's motion is denied.

4. *Defendant's Motion to Exclude the Expert Testimony and Report of Derek Hodgin [ECF No. 182]and Defendant's Motion to Exclude Evidence Pertaining to Design or Selection of Elastomeric Coating [ECF No. 186]*

Because CentiMark's motions in limine seeking preclusion of the expert testimony of Derek Hodgin and whether Plaintiff is permitted to introduce evidence and testimony regarding the design or selection of the elastomeric coating are based on similar arguments, and for the sake of brevity, the motions will be addressed in tandem.

CentiMark wants to preclude Hodgin from testifying to the following: (1) that CentiMark has a duty to inspect and/or analyze the structure of Buddy's building to determine whether the coating applied was an appropriate remedy for the leaks before CentiMark installed the acrylic

coating; (2) whether CentiMark violated various building codes during the course of the work at Buddy's; and (3) that the repairs necessary are within the scope of CentiMark's obligations under the warranty because it is a legal conclusion. Def.'s Br. in Supp. of Mot. in Lim. [ECF No. 183] at 2. Lastly, CentiMark argues that Hodgin is not a properly qualified expert under Daubert and his report and testimony should be precluded because his testimony contradicts his own report and he only visited Buddy's roof once. *Id.* In support, CentiMark argues that Hodgin made only one visual inspection of Buddy's roof six years after CentiMark completed its work and the only "scientific" evidence he reviewed was temperature and humidity data collected by data loggers installed by Buddy's. *Id.* at 3.

CentiMark also moves to exclude "evidence and testimony pertaining to whether it was proper, from an engineering or technical standpoint, to employ an elastomeric coating system on Buddy's roof in an effort to stop the roof leakage caused by the 2004 hailstorm." Def.'s Mot. in Lim. [ECF No. 186] at ¶ 3. Under this argument, CentiMark seeks to exclude any evidence that it had the duty to select a new system and that it recommended the installation of the system. *Id.* ¶¶ 4-5. CentiMark claims that this evidence is not relevant to prove a fact which is of consequence in determining the action because it involves that claims of fitness for a particular purpose and/or merchantability which claims have been dismissed on summary judgment. Def.'s Br. in Supp. of Mot. in Lim. [ECF No. 187] at 1-2.

Buddy's argues that the above evidence is relevant to prove whether CentiMark installed a "waterproof material" as promised by the contract and whether CentiMark breached the duty to perform in a workmanlike manner. Further, Buddy's denies that it will offer evidence and testimony as to whether it was proper from an engineering or technical standpoint to use the elastomeric coating system, and it only "intends to present evidence that CentiMark specifically

agreed in the contract to apply to Buddy's leaking roofs a waterproofing material." Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 216] at ¶ 3. Moreover, Buddy's only intends to prove that "the selection of the coating which CentiMark made was defective because CentiMark failed to properly take into account the visible conditions of the site on which the coating was going to be sprayed, thereby providing workmanship and materials that were both defective, in breach of its warranty obligations." *Id.* at ¶ 5.

CentiMark's motion with regard to disqualifying Hodgin under Daubert is denied. That Hodgin only visited the site once and allegedly contradicted himself in his expert report and deposition affects the weight and credibility of Hodgin's testimony, and not to his qualifications or methods used to support his opinion. Accordingly, CentiMark's motion is denied in this respect.

To the extent that Hodgin seeks to testify as to CentiMark's consideration of inspecting the roof and complying with building codes, Hogdin's testimony is relevant to his expert opinion as to whether CentiMark conformed with industry standards in expounding its duty to perform in a workmanlike manner and relevant to determine whether CentiMark's workmanship breached the warranty provision of the contract. CentiMark's arguments go to Hodgin's credibility, a theory which can be developed on cross examination and are for the jury to give weight to. As to Hodgin's testimony regarding CentiMark's duties under the warranty, specifically, that the leaks are covered under the warranty, Hodgin may not provide this testimony, as it is a legal conclusion. *See Geonnotti v. Amoroso*, 2008 WL 8893708, at *1 (E.D.Pa. 2008) ("An expert is not permitted to testify as to a legal conclusion, as this would invade the exclusive province of the Court.").

Additionally, Buddy's concedes that it will not offer evidence and/or testimony as to

whether it was proper from an engineering or technical standpoint to use an elastomeric coating, therefore CentiMark's motion in limine is granted in that respect. However, Buddy's may introduce evidence and testimony that the selection of the coating, workmanship and materials were defective under industry standards because it is relevant to determine whether CentiMark breached the warranty provision of the contract, and breached the implied warranty to perform in a workmanlike manner.

Accordingly, CentiMark's motions in limine [ECF No. 182 and 186] are granted in part and denied in part as outlined above.

5. *Defendant's Motion to Exclude Parol Evidence [ECF No. 184]*

CentiMark seeks to exclude any evidence or testimony relating to:

> discussions and negotiations between Buddy's and CentiMark leading up to the execution of the integrated contract (including terms that were discussed but did not become part of the final, signed, integrated contract), and, alleged representations made by CentiMark that the elastomeric coating . . . was a waterproofing material that would stop Buddy's roof from leaking.

Def.'s Mot. in Lim [ECF No. 184] at ¶ 3. CentiMark seeks to exclude this evidence on the basis that it violates the parol evidence rule because it contradicts the terms of the signed, integrated agreement and it is irrelevant to determine a fact at issue relating to the breach of contract or the duty to perform in a workmanlike manner. Additionally, CentiMark argues that such evidence is more prejudicial than probative used by Buddy's to vilify CentiMark's business practices. *Id.* at ¶¶ 4-6.

At the motions hearing, CentiMark argued that the term "waterproofing" was an ambiguous term of the contract. CentiMark's specification agreement stated that CentiMark was to apply a "waterproofing material" to Buddy's roof. The specification became part of the contract. *See* Mem. Op. and Order [ECF No. 157] at 6. CentiMark would have the court believe

that the term "waterproofing material" means that the elastomeric coating had "waterproofing characteristics" but not that it means a "water-tight barrier." CentiMark supplied the following analogy of "waterproofing" at the motion hearing:

> The coating that was applied does have waterproofing characteristics. The way I like to think of it is if you have a wooden deck off [of] the back of your house and you apply a waterproofing stain to the wood, well, that waterproofing stain protects the water from penetrating the surface of the wood and getting into the wood and causing dry rot . . . . But that waterproofing stain doesn't fill in the slats . . . on the surface of the deck, to prevent the ground from underneath it becoming wet.

Tr. at 43.

Buddy's argues that "waterproofing material" means a sealed water-tight barrier to prevent the water from leaking through the roof. *Id*. at 46. Further, Buddy's argues that the testimony it seeks to introduce is consistent with the terms of the contract, does not violate the parol evidence rule, and is admissible to explain the purpose of the contract. Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 227] at 2. Further, Buddy's argues that it should be permitted to introduce evidence as to discussions between Buddy's and CentiMark leading up to the execution of the contract under the doctrine of necessary implication. *Id*. at 3.

Each argument will be addressed in turn.

### a. Parol Evidence

In interpreting a contract, the "intention of the parties is a paramount consideration." *Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc*., 2013 WL 3991801, at *4-5 (Pa. Super. Ct. 2013). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993). When a contract's terms are clear and unambiguous, the parties' intent is to be established by the document itself. *Insurance Adjustment Bureau, Inc.*

*v. Allstate Ins. Co.*, 905 A.2d 462, 480 (Pa. 2006). However, where a contract's terms are ambiguous "parol evidence is admissible to explain or clarify or resolve that ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *In re Herr's Estate*, 161 A.2d 32, 34 (Pa. 1960). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Insurance Adjustment Bureau, Inc.*, 905 A.2d at 481. (citations omitted). It is a question of law for the court to decide whether a contract's terms are ambiguous, "whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact." *Id*. If the court determines that the contact's terms are ambiguous, "the provision is to be construed against the drafter." *State Farm and Casualty Co. v. PECO*, 54 A.3d 921, 928 (Pa.Super. Ct. 2012).

Primarily, the parties' arguments are legally illogical. CentiMark argues that the contract is ambiguous as it pertains to the definition of "waterproofing materials" but it moves the court to exclude any parol evidence, a contrary result of the existence of an ambiguous term. In response, Buddy's argues that the term "waterproof" is unambiguous but wants to introduce extrinsic evidence to explain the terms of the contract. The parties rely on a separate component of the parol evidence rule in support of their arguments, namely, that set forth by the Pennsylvania Supreme Court in *Yocca v. Pittsburgh Steelers Sports, Inc*., 854 A.2d 425, 436 (Pa. 2004). The Pennsylvania Supreme Court has determined that absent any fraud or mistake, a fully integrated written agreement is the only evidence of the intent of the parties and the terms of the agreement. *Id*. All other preliminary negotiations, conversations and verbal agreements are merged in and superseded by the written contract. *Id*. Therefore, any evidence that seeks to alter or modify the meaning of the agreement is barred. *Id*. This is premised on the

understanding that if the verbal agreement was so important, the parties would have confirmed it in the written agreement. *Id. See also Gianni v. R. Russel & Co.*, 126 A. 791, 792 (1924); *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 589 (Pa.Super.Ct. 2013). CentiMark would have the court apply the parol evidence rule to bar any pre-contractual communications between CentiMark and Buddy's. Buddy's argues that these communications do not seek to alter or modify the terms of the agreement, so they should be admissible. Practically speaking, however, CentiMark is not trying to bar additional terms to be added to the contract, but is trying to bar any evidence that it promised to apply a waterproof coating. Yet, CentiMark <u>did</u> specifically promise to apply "waterproofing materials" as set forth in the Specification. At the motions hearing, the parties argued whether this term was ambiguous, which gives rise to a different application of the parol evidence rule as set forth above, *i.e.*, whether parol evidence is admissible to explain an ambiguous contractual term. The court granted summary judgment in favor of CentiMark on the basis of the parol evidence rule as it applied in the context of a fraudulent inducement claim. *See* Mem. Op. [ECF No. 157] at 10-12 ("Buddy's is barred from asserting a claim of fraud in the inducement by arguing any evidence of prior promises, representations, assertions, omissions or agreements concerning the acrylic coating to nullify or avoid the contract."). This reasoning does not apply in the current context because the parties now argue whether parol evidence is admissible to define the contract's terms. Accordingly, the court will address whether parol evidence is permitted to explain the term "waterproofing material" as it appears in the contract.

The term "waterproof" is unambiguous and means a "water tight barrier." To find otherwise would render meaningless the warranty provision guaranteeing that CentiMark would fix "leaks" from faulty materials and/or workmanship. Moreover, the Specification also states

that CentiMark will prepare the site to "ensure a water tight seal." Specification [ECF No. 104-2] at 2. Webster's Dictionary defines the adjective "waterproof" as "1. Unaffected by or impenetrable to water. 2. Made of or treated with rubber, plastic, or a sealing agent to resist water penetration." *Webster's II New Riverside University Dictionary* 1305 (1988). Webster's Dictionary defines the noun "material" as "1. The substance or substances out of which a thing is or can be made." *Webster's II New Riverside University Dictionary* 732 (1988). Because the term "waterproof material" is capable of only one meaning, and CentiMark's interpretation runs afoul of the ordinary rules of contract interpretation, there is no reason to introduce extrinsic evidence on the parties' intent or conversations of what "waterproof materials" means. No party will be permitted to offer evidence as to the conversations that took place before the contract's execution to explain the term "waterproofing materials," *i.e.*, Buddy's will not be permitted to call a witness or put into evidence that CentiMark promised to apply a water tight barrier as the parties intent is encompassed in the contract and likewise, CentiMark will not be able to illustrate that waterproofing meant anything other than a water tight barrier or that it told Buddy's that the elastomeric coating was not a waterproofing material.

### b. Doctrine of Necessary Implication

Buddy's also argues that it should be permitted to introduce into evidence communications between the parties before the contract was signed on the basis of the doctrine of necessary implication. The doctrine of necessary implication has been discussed as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Slater v. Pearle Vision Ctr., Inc.*, 546 A.2d 676, 679 (Pa. Super. Ct. 1988) (quotations omitted).

Therefore, where a party's obligation is "within contemplation of the parties when making the contract or is necessary to carry out their intention, the law will imply that obligation and enforce it even though it is not specifically and expressly set forth in the written contract." *Argonaut Ins. Co. v. HGO, Inc*., 1996 WL 433564, at *3 (E.D.Pa. July, 25 1996) (quoting *Gallagher v. Upper Darby Twp*., 539 A.2d 463, 468 (Pa. Cmwlth. 1988) *appeal den*. 554 A.2d 513 (Pa. 1988).

Buddy's and CentiMark claim that there are factual disputes as to the parties' intent at the time they entered into the contract. Buddy's claims that it wanted its leaky roof fixed and CentiMark recommended applying the elastomeric coating to stop those leaks; CentiMark claims it was there only to apply the elastomeric coating chosen by Buddy's before it was contacted. CentiMark cannot claim, however, that it did not promise to apply a waterproofing material because this is an express unambiguous term of the contract. These factual disputes concerning the parties' intent to enter into a contract are not material or relevant to any of the remaining claims. It is unclear how any of this evidence is relevant to determine a breach of contract for the materials applied to the roof or the workmanship employed by CentiMark, or to determine the failure of CentiMark to perform in a workmanlike manner. That Buddy's determined to use the elastomeric coating before contacting CentiMark, or that CentiMark recommended applying the coating would not make it more or less probable that it breached the contract or failed to perform in a workmanlike manner. Testimony as to the communication between Buddy's and CentiMark prior to the contract do not make any fact of consequence more or less probable in determining the action and is therefore inadmissible.

Accordingly, Defendant's motion in limine [ECF No. 184] is granted in part and denied in part.

> 6. *Defendant's Motion to Exclude Evidence Suggesting that CentiMark's Warranty Failed of its Essential Purpose [ECF No. 188]*

CentiMark seeks to exclude any and all evidence that the warranty "failed of its essential purpose" because this is an exclusive remedy that arises solely from the Uniform Commercial Code ("U.C.C.") and it is irrelevant because all of the U.C.C. claims were dismissed on summary judgment. Def.'s Mot. in Lim. [ECF No. 188] at ¶¶ 3-8.

Buddy's somewhat concedes this point by replying:

> Plaintiff intends to prove that CentiMark breached its contract to apply a waterproof material . . . and it intends to prove that CentiMark failed to repair leaks in Buddy's roofs because its workmanship and materials were defective. Buddy's, in the context of a common law breach of contract case, does not need to deal with the concept of the "failure of an essential purpose."

Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 219] at 3.

Because all of Buddy's U.C.C. claims have been dismissed, and any evidence that the warranty "failed of its essential purpose" is only relevant for determining a U.C.C. claim, any evidence pertaining to this is irrelevant and inadmissible.

Accordingly, Defendant's motion in limine [ECF No. 188] is granted.

   7. *Defendant's Motion to Exclude the Expert Testimony and Report of Robert Stanford [ECF No. 192]*

CentiMark seeks to preclude Buddy's expert, Robert Stanford from testifying that (1) the acrylic coating is merely a paint and not a waterproofing material; (2) CentiMark's products and workmanship caused "gases" that caused destructive elements to affect the roof; (3) that marketing acrylic coating is a deceptive trade practice; (4) the coating did not meet the basic requirements of industry standards; (5) CentiMark's work constituted a breach of contract; (6) comments made by CentiMark's general counsel to Buddy's were unconscionable and unreasonable. Pl.'s Mot. in Lim [ECF No. 192] at ¶ 4. CentiMark also challenges Stanford's

testimony under Daubert and seeks preclusion of his expert report.  *Id*. at ¶ 7.

Buddy's responds that it does not intend to offer Stanford's report as evidence, therefore this part of CentiMark's motion is granted as uncontested.[5]  Buddy's responds to CentiMark's other arguments that Stanford is sufficiently qualified under Daubert as he has "substantial experience and qualifications in the industry of metal roof construction, repair and investigation." Pl.'s Resp. to Def.'s Mot. in Lim. [ECF No. 220] at ¶ 7.  Plaintiff concedes that it will not call Stanford to testify whether the use of the coating was an unfair trade practice, with regard to CentiMark's counsel's letter to Buddy's, or whether CentiMark breached the contract. *See* Tr. at 48-49.  Therefore, CentiMark's motion will be granted in this respect.

As to the remaining issues, Stanford may testify that the acrylic coating was merely a paint and not a waterproofing material as this is relevant to the determination of the breach of contract claim as to whether Defendant installed a waterproofing material.  Further, Stanford may testify that the products and installation caused gases in the caulking to fail and caused leaks as it is relevant to determine whether CentiMark breached the contract and the warranty provision.  Lastly, Stanford may testify as to whether CentiMark installed the coating and made repairs consistent with industry standards because it is relevant to determine whether CentiMark breached the implied duty to perform in a workmanlike manner.

Accordingly, CentiMark's motion in limine [ECF No. 192] is granted in part and denied in part as set forth above.

8.  *Defendant's Motion to Exclude Irrelevant Photo and Video Evidence [ECF No. 194]*

Lastly, CentiMark moves to preclude certain photographs and videos of the roof taken by

---

[5]  The court has already determined that all experts are to testify live and that all expert reports are inadmissible as evidence.  *See* Pretrial Order [ECF No. 169] at 2.

Buddy's experts because they were taken six years after CentiMark installed the coating and as such are more prejudicial than probative under F.R.E. 403. Def.'s Mot. in Lim [ECF No. 194] at ¶ 3. Further, CentiMark argues that they are evidence of subsequent remedial measures inadmissible under the Federal Rules of Evidence. *Id*. at ¶ 7.

Buddy's argues that the pictures are not prejudicial because they accurately depict something as of a time that is relevant to the case, and a witness may testify that the pictures and/or videos accurately depict a condition that occurred at a relevant point in time. Pl.'s Resp. to Def.'s Mot. in Lim [ECF No. 223] at 2. Further, the roof was under warranty when the pictures and videos were taken. *Id*. at 3.

Federal Rule of Evidence 407 provides "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . a defect in a product or its design[.]" Fed. R. Evid. 407.

First, it is unclear how Federal Rule of Evidence 407 regarding subsequent remedial measures is relevant to the instant issues. CentiMark had a contractual obligation to fix leaks resulting from defects of materials and/or workmanship, the so-called "subsequent remedial measures" that it now seeks to preclude evidence of. Rule 407 generally applies to encourage "people to take, or at least not to discourage them from taking[] steps in furtherance of added safety." Fed. R. Evid. 407 Advisory Committee Notes 1972. Buddy's offers no authority in support of its contention. A party who contracts to make any repairs from defects of workmanship or materials and then carries out those repairs in a defective manner cannot then argue that any evidence of their alleged defective repairs is barred by Rule 407. Such a conclusion is illogical and would make every breach of contract action for a warranty provision not actionable.

Furthermore, the photographs and videos are not prejudicial to CentiMark because the roof is still in its warranty to this date, and there is no evidence that Buddy's or a third party has explicitly tampered with the roof. Any prejudice that the photographs and videos are dated or do not show the roof at the time of completion and conjure sympathy for Buddy's can be remedied with a limiting jury instruction to that effect.

Accordingly, Defendant's motion in limine [ECF No. 194] is denied.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, the court will grant in part and deny in part the parties' motions in limine. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


BUDDY'S PLANT PLUS ))
CORPORATION, )
        Plaintiff, )     Civil Action No.  10-670
       )
     v. )
       )     Magistrate Judge Robert C. Mitchell
CENTIMARK CORPORATION, )
        Defendant. )

## **ORDER**

AND NOW, this 18th day of October, 2013, the parties' motions in limine are hereby

GRANTED IN PART and DENIED IN PART, as follows:

(1)    Plaintiff's motion in limine to preclude CentiMark from arguing or introducing evidence that an alleged defect in the construction of the roof and laps on the Plaintiff's facility caused CentiMark's repairs to fail [ECF No. 170] is hereby **DENIED**;

(2)    Plaintiff's motion in limine to exclude the expert testimony concerning condensation of the roof [ECF No. 174] is hereby **DENIED**;

(3)    Defendant's motion in limine to exclude evidence, argument and testimony irrelevant to the limited issues before the court [ECF No. 176] is hereby **DENIED** without prejudice;

(4)    Defendant's motion in limine to exclude the expert testimony and report of Kirby Hartman [ECF No. 178] is hereby **DENIED**;

(5)    Defendant's motion in limine to exclude irrelevant expert testimony [ECF No. 180] is hereby **DENIED**;

(6)    Defendant's motion in limine to exclude the expert testimony and report of Derek Hodgin [ECF No. 182] is hereby **GRANTED IN PART** and **DENIED IN PART**;

(7)    Defendant's motion in limine to exclude parol evidence [ECF No. 184] is hereby **GRANTED IN PART** and **DENIED IN PART**;

(8)    Defendant's motion in limine to exclude evidence pertaining to design or selection of elastomeric coating [ECF No. 186] is hereby **GRANTED IN PART** and **DENIED IN PART**;

(9)     Defendant's motion in limine to exclude evidence suggesting that CentiMark's warranty failed of its essential purpose [ECF No. 188] is hereby **GRANTED**;

(10)    Defendant's motion in limine to exclude the expert testimony and report of Robert Stanford [ECF No. 192] is hereby **GRANTED IN PART** and **DENIED IN PART**; and

(11)    Defendant's motion in limine to exclude irrelevant photo and video evidence [ECF No. 194] is hereby **DENIED**.

By the Court,
<u>s/ ROBERT C. MITCHELL</u>
ROBERT C. MITCHELL
United States Magistrate Judge

cc: All counsel of record via electronic filing