IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| BUDDY'S PLANT PLUS | ) | |
| CORPORATION, | ) | |
|       Plaintiff, | ) | Civil Action No.  10-670 |
| | ) | |
|    v. | ) | |
| | ) | Magistrate Judge Robert C. Mitchell |
| CENTIMARK CORPORATION, | ) | |
|       Defendant. | ) | |


## MEMORANDUM OPINION AND ORDER OF COURT


ROBERT C. MITCHELL, Magistrate Judge.

## I.     INTRODUCTION

Presently before the Court are the following motions filed by defendant, CentiMark Corporation ("CentiMark"):

1.  A renewed motion for judgment as a matter of law [ECF No. 270];

2.  A renewed motion for judgment as a matter of law [ECF No. 272];

3.  A motion for a new trial [ECF No. 278]; and

4.  A motion for reconsideration of the [ECF No. 264] Order denying oral motion to mold the verdict. [ECF No. 295].

The issues have been fully briefed.  For the following reasons, the Court finds that CentiMark is not entitled to judgment as a matter of law, a new trial, or for reconsideration of any issue.  Accordingly, CentiMark's motions are denied.

## II.    BACKGROUND

Because the facts of the case are well known by the parties, the Court will only recount the facts necessary for the disposition of the present motions.  Plaintiff, Buddy's Plant Plus

Corporation, ("Buddy's") brought this breach of contract action against CentiMark for the installation of an allegedly defective roof coating system installed by CentiMark at Buddy's facilities. A jury trial was held from November 19, 2013 to December 2, 2013 and the jury returned a verdict in favor of plaintiff in the amount of $1,800,000.00. At the close of Buddy's case in chief, CentiMark moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 which the Court initially took under advisement and subsequently denied. Upon return of the jury's verdict, defendant moved to mold the verdict to an amount not exceeding the contract price, approximately $550,000. The court also denied that motion.

CentiMark now renews its motions for judgment as a matter of law and motion for a new trial and seeks reconsideration of the Court's decision denying its motion to mold the verdict. The Court will address each motion in turn.

## III. STANDARD OF REVIEW

### a. Federal Rule of Civil Procedure 50(b)

Under Federal Rule of Civil Procedure 50,

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). Where a party renews the motion after trial, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). In determining a motion for judgment as a matter of law, a court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences the jury could have drawn from the evidence. *Lightning*

*Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).  A Rule 50(b) motion should only be granted if there is no rational basis for the jury's verdict. *Id*.  "More particularly, a judgment notwithstanding the verdict may be granted under Fed. R. Civ. P. 50(b) only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *Addie v. Kjaer*, 737 F.3d 854, 866 (3d Cir. 2013) (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)).  Accordingly, a court should grant a party's motion for judgment as a matter of law "sparingly." *Pitts v. Delaware*, 464 F.3d 151, 155 (3d Cir. 2011).

b.  *Federal Rule of Civil Procedure 59*

A motion for a new trial or to alter or amend a judgment under Federal Rule of Civil Procedure 59 may be granted "when the verdict is contrary to the great weight of the evidence; that is where a miscarriage of justice would result if the verdict were to stand," *Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 453 (3d Cir. 2001), or "when the court believes the verdict results from jury confusion." *Brown v. Nutrition Mgmt. Servs. Co.*, 370 Fed. App'x 267, 268-70 (3d Cir. 2010).  In determining whether a new trial should be granted, the court must draw all reasonable inferences in favor of the party who prevailed at trial. *See Moyer v. United Dominion Indus*., 473 F.3d 532, 545 (3d Cir. 2007).

Although a court has the power to set aside a jury's verdict due to the lack of evidence, the court's power to do so for this reason "is severely circumscribed." *Victor v. Lawler*, 2012 WL 2121331, at *2 (M.D.Pa. June 12, 2012).  If the verdict is against the weight of the evidence, a new trial is "proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Greenleaf v. Garlock, Inc*., 174 F.3d 352, 366 (3d Cir. 1999) (citations omitted).

*See also Murray v. Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (the verdict must be "so unreasonable as to offend the conscience of the court."). Additionally, where a motion for a new trial is based on insufficient evidence, a new trial is the proper remedy only if "a miscarriage of justice" would occur if the jury's verdict would not be disturbed. *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

      c. *Federal Rule of Civil Procedure 61*

Pursuant to Federal Rule of Civil Procedure 61:

> Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61. Thus, a court's decision to grant a new trial based on errors of law "is limited only by the principle that such errors must not be harmless – that is, a court may not grant a new trial based on 'errors and defects that do not affect any party's substantial rights.'" *Hailey v. City of Camden*, 631 F.Supp.2d 528, 540 (D.N.J. 2009) (quoting Fed. R. Civ. P. 61).

      d. *Motion for Reconsideration*

A motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Kulesa v. Rex*, 519 Fed. App'x 743, 746 (3d Cir. 2010) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

CentiMark argues that the third situation applies here for multiple reasons, therefore that subsection will frame the Court's analysis. To demonstrate clear error or manifest injustice, the United States Supreme Court mandates a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citing *United States v. U.S. Gypsum*

*Co.*, 333 U.S. 364, 395 (1948)).  Moreover, a defendant must "base its motion on arguments that were previously raised but were overlooked by the Court." *United States v. Jasin*, 292 F.Supp.2d 670, 676 (E.D.Pa. 2003).  Moreover, a motion for reconsideration "is not a proper vehicle to merely attempt to convince the court to rethink a decision it has already made[,]" *Colon v. Colonial Intermediate Unit 20*, 443 F.Supp.2d 659, 667 (M.D.Pa. 2006) (citations omitted) and "parties are not free to relitigate issues that the Court has already decided." *Jasin*, 292 F.Supp.2d at 676 (citations omitted).  Such a motion may not be used by an "unsuccessful party to rehash" arguments previously disposed of by the court. *Keyes v. Nat'l R.R. Passenger Corp.*, 766 F.Supp. 277, 280 (E.D.Pa. 1991).

## IV.    DISCUSSION

### a.    *CentiMark's Motions for Judgment as a Matter of Law*

CentiMark moves for judgment as a matter of law and provides three arguments in support thereof: (1) no reasonable jury could conclude that Buddy's timely filed suit; (2) Buddy's does not have standing to bring claims related to the destruction of the roof; and (3) the Court lacks subject matter jurisdiction for Buddy's failure to join Studer Rentals under Federal Rule of Civil Procedure 19.  The Court finds that each of CentiMark's arguments fail and accordingly will deny each motion for judgment as a matter of law.  Additionally, CentiMark moves for a new trial based on these same arguments which will also be denied.  Each argument will be addressed in turn.

#### 1.    One-year Statute of Limitations

CentiMark first argues that judgment as a matter of law is appropriate because no reasonable jury could conclude that Buddy's timely filed suit in compliance with the contractual one-year statute of limitations. *See* Def.'s Mot. for J. as a Matter of Law [ECF No. 270] at ¶ 4.

This Court held that the one-year statute of limitations provision in the contract was valid and enforceable and if the jury found that if Buddy's knew or in the exercise of reasonable diligence should have known of its claims against CentiMark prior to November 3, 2008, Buddy's suit was time-barred. *Id*. at ¶ 5. The jury found that Buddy's did not know or should have known in the exercise of reasonable diligence that before November 3, 2008 CentiMark materially failed to perform one or more of its duties under the contract, and did not know or should have known in the exercise of reasonable diligence that the continued leaking at its buildings was the result of CentiMark's defective material or workmanship. *See* Verdict Slip [ECF No. 261] at 1.

Buddy's responds that because the statute of limitations was a contractual provision, only an interpretation of that provision controls the application limitations period. *See* Pl.'s Br. in Op. of Def.'s Mot. for J. as a Matter of Law [ECF No. 289] at 1.

The contractual provision regarding the statute of limitations states: "Any action by purchaser to enforce any claims against CentiMark, must be commenced within one (1) year from the date that a defect in materials or workmanship, or other breach or any other claim is discovered or reasonably should have been discovered." 11/8/2005 Non-Prorated Limited Roof Warranty IV(a) [ECF No. 4-2 at 20]. In issuing its memorandum opinion on summary judgment, this Court held that the date Buddy's discovered or reasonably should have discovered that CentiMark's materials or workmanship was defective was a question of fact within the province of the jury.[1] Memo. Op. and Order [ECF No. 157] at 17. CentiMark has not convinced this

---

[1] Specifically, the Court held with respect to the validity of the statute of limitations provision: "In the instant case, the applicable limitations period is one year after the breach or injury had been or should have been discovered. Buddy's filed the instant action on November 3, 2009. However, whether Buddy's was diligent and reasonable in discovering its injury is a jury determination. Whether the acts of CentiMark continuing to fix the roof for a period spanning four years after the Job Completion Form was executed, prevented Buddy's from discovering any injury is a question of fact examining Buddy's reasonableness in its discovery of its injury. Therefore, if a jury finds that it was reasonable for Plaintiff to discover the breach of contract at a time before November 3, 2008 (one year prior to the action's commencement), the complaint is untimely and Defendant will be entitled to judgment as a matter of law as to Counts IV and V at that time. In the alternative, if the jury believes Plaintiff's contention that it

Court that it should have otherwise made a determination of whether Buddy's practiced "reasonable diligence" in discovering a defect in material and/or workmanship. Whether Buddy's did so was a question of fact for the jury to determine and the Court declines to re-decide this issue. Furthermore, there was substantial evidence for the jury to determine that Buddy's filed suit within the applicable limitations period. Buddy's cooperated with CentiMark's roofing expert who gave no conclusive evidence that the roof leaked due to CentiMark's defective materials and/or workmanship. Additionally, there was evidence introduced that Buddy's expert Robert Standford only reported to Buddy's that the leaking was caused by CentiMark's use of defective workmanship and/or materials in July 2009, five months before Buddy's filed suit.

Accordingly, the jury's finding that suit was timely filed was supported by substantial evidence and this Court will not disturb the verdict rendered. Additionally, the Court has already determined that this was properly a factual determination for the jury to decide and it was not a clear error of law to reconsider the Court's past ruling. CentiMark's motion for judgment as a matter of law as it pertains to the statute of limitations issue is denied.

2. Lack of Standing

CentiMark next argues that this Court lacks jurisdiction over this matter because Buddy's lacked standing to sue and/or failed to join a necessary party. CentiMark argues that Ed Studer, President of Buddy's, testified that Buddy's is not the owner of the buildings that are the subject of the litigation upon which CentiMark installed a roof system and performed various warranty-related repairs. Def.'s Mot. for J. as a Matter of Law [ECF No. 272] at ¶ 4. While CentiMark concedes that Buddy's has standing to sue under a contractual theory based on privity, it argues

did not discover the breach until a time on or after November 3, 2008, Plaintiff's complaint was timely filed. Memo. Op. and Order [ECF No. 157] at 17.

that Buddy's does not have standing to sue for any claim for destruction of the entire roof that necessitates replacement because Buddy's does not have any property interest in the roofs, as the buildings are owned by Studer Rentals, a non-party to the suit who is a required party under Federal Rule of Civil Procedure 19(a). *See* Def.'s Br. in Supp. of Mot. for J. as a Matter of law [ECF No. 273] at 4-5. CentiMark claims that if it "actually destroyed the roof of the . . . [b]uildings, the damages it owes are to Studer Rentals, not Buddy's. Moreover, if this Court awarded damages to Buddy's for CentiMark's alleged destruction of the roof, CentiMark could be sued in a separate case by Studer Rentals and be exposed to double liability." *Id*. at 6.

Buddy's responds that there was enough factual evidence to show that it had standing to bring these claims because Studer testified to the fact that Buddy's had a possessory interest in the buildings, and under the lease agreement, Buddy's was under a duty to maintain and insure the buildings. *See* Pl.'s Br. in Op. of Def.'s Mot. for J. as a Matter of Law [ECF No. 282].

The Court notes that this is the first time that CentiMark has challenged Buddy's standing. But, because the question of standing is jurisdictional and not subject to waiver, the court must address this issue. *See City of Edmond v. Robinson*, 517 U.S. 1201, 1201-02 (1996); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.").

Article III of the Constitution limits federal courts to adjudication of only "cases and controversies." U.S. Const. art. III, § 2, cl. 1. "Courts enforce the case-or-controversy requirement through the several justiciability doctrines[,] . . . [p]erhaps the most important of [which] is standing." *American Auto. Inc. Co. v. Murray*, 658 F.3d 311, 317 (3d Cir. 2011) (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009)). The doctrine of standing requires that the litigant show it is entitled to have the "court decide the merits of its

case." *Murray*, 658 F.3d at 317 (citing *Allen v. Wright*, 468 U.S. 737, 750-51 (1984)). Constitutional standing has three elements: "(1) an injury in fact that is a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) causation, the showing of a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) redressability, that is, it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Murray*, 658 F.3d at 317-18 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotation marks omitted).

Here, the Court finds that Buddy's has standing to sue for a claim for the destruction of the entire roof. Buddy's suffered a concrete injury, *i.e.*, a leaking roof, that was caused by CentiMark's failure to coat the roof with a waterproofing material as set forth in the contract and/or the failure to repair the defects from workmanship and/or materials, causing more damage to the roof, and an outcome favorable to Buddy's, *i.e.*, damages, will redress the injury. Buddy's also has standing to bring claims relative to damage done to the roof during the warranty period. Buddy's had a possessory interest in the buildings via the lease agreement between Buddy's and Studer Rentals. *See* Studer Rentals Lease Agreement [ECF No. 127-9]. Moreover, the undisputed testimony of Ed Studer was that the interest in repairing Buddy's roof was assigned to Buddy's and this was evidenced by the fact that Buddy's maintained insurance on the buildings and brought suit against CentiMark. *See* Tr. [ECF No. 306] at 2-5. Further, the lease agreement explicitly permits the assignment of rights. *See* Lease Agreement [ECF No. 127-9] at ¶ 18 ("Lessor shall have the right to assign or transfer, in whole or in part, every feature of its right and obligations hereunder and in the building complex and premises. Such assignments or transfers may be made to a corporation, trust, trust company, individual or group of individuals,

and howsoever made shall be in all things respected and recognized by Lessee.").[2]  Moreover, Studer has inexplicably testified and provided by sworn affidavit that Studer Rental's rights to litigate the matter have been assigned to Buddy's.  *See* Pl.'s Br. in Op. of Def.'s Mot. for J. as a Matter of Law [ECF No. 282] at 4.

Therefore, Buddy's has standing to bring claims for the destruction of the roof, and accordingly, CentiMark's motion for judgment as a matter of law on this claim is denied.

### 3.  Federal Rule of Civil Procedure 19

CentiMark argues that this Court "lacks subject matter jurisdiction over Buddy's claims" because "the principals of Buddy's and Studer failed to join as plaintiffs and/or otherwise failed to account for the interests of Studer Rentals, a required party that could have been feasibly joined." Def.'s Br. in Supp. of Mot. for J. as a Matter of law [ECF No. 273] at 7.

Federal Rule of Civil Procedure 19 requires that

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

---

[2]     The lease agreement provides in other relevant parts:  "Lessor shall maintain in good condition all of the building roof and exterior walls" Studer Rentals Lease Agreement [ECF No. 127-9] at ¶ 4.  It further provides: "Lessee shall obtain and keep in full force and effect during the lease term, at its own costs and expense, adequate public liability insurance, such insurance to afford protection against any and all claims for personal injury, death, or property damage occurring in, upon, adjacent to, or connected with the leased premises and any part thereof, said insurance to be written by a good and solvent insurance company of recognized standing, admitted to do business in the State of Texas, which shall be reasonably satisfactory to the Lessor." *Id*. at ¶ 16.

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

CentiMark argues that under Rule 19(a)(B)(ii), Studer Rentals is an entity with an interest related to the subject of the action because it owns certain buildings at issue, and that disposing of this action in its absence may leave CentiMark subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations from Studer Rentals. Although CentiMark argues that Buddy's failed to join this party, it ignores the fact that Rule 19 permits any party to move for the joinder of a non-party. Therefore, we will construe CentiMark's motion as one for joinder of Studer Rentals.

First and foremost, CentiMark's reasoning that this court lacks subject matter jurisdiction for failing to join Studer Rentals as a plaintiff is legally untenable. By CentiMark's own admission, Studer Rentals is a "Texas corporation . . . [and] shares an address and officers with Buddy's. Meanwhile, CentiMark is a Pennsylvania corporation." Def.'s Br. in Supp. of Mot. for J. as a Matter of law [ECF No. 273] at 7. CentiMark's argument that this Court lacks subject matter jurisdiction, while admitting that joining Studer Rentals would not divest the court of subject matter jurisdiction is perplexing. Adding Studer Rentals as a plaintiff would not disturb this court's diversity jurisdiction.

Next, the court finds that CentiMark's motion is untimely. A motion to dismiss for failure to join an indispensable party "must be raised before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim." Fed. R. Civ. P. 12(b). Only a Rule 19(b) defense for failure to join an indispensable party is preserved **until trial**. Fed. R. Civ. P.

12(h)(2). *See also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968); *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 434 (5th Cir. 1992) (a Rule 19 claim "must normally be raised in a timely fashion **prior to trial**.") (emphasis added). Therefore, a motion under Rule 19 is only properly preserved until after trial if joinder would divest the court of subject matter jurisdiction in the first instance. A Rule 19(b) claim is only preserved **until trial**, as set forth in the plain language of Rule 12(h).

Here, we do not reach a Rule 19(b) analysis, because "[a] Rule 19 analysis only proceeds to subpart (b) [and thus will be preserved until trial] if joinder of the parties would not be feasible[.]" *Principal Life Ins. Co. v. DeRose*, 2012 WL 1642606, at *6 (M.D.Pa. May, 10, 2012). Joinder of Studer Rentals is feasible because as discussed, *supra*, it would maintain diversity. However, "Rule 12(h)(2) does not preserve a party's right to raise a defense based on Rule 19(a)." *Id.* The court finds that CentiMark's motion to add Studer Rentals is made untimely because this analysis does not warrant a Rule 19(b) or otherwise jurisdictional discussion.[3] *See also Provident*, 390 U.S. at 110 ("After trial, however, if the defendant has failed to assert this interest [under Rule 19], it is quite proper to consider it foreclosed."). Accordingly, the motion is denied as untimely.

### b. CentiMark's Motion for a New Trial

In addition to seeking a new trial based on the arguments set forth in its motions for judgment as a matter of law, CentiMark seeks a new trial based on alleged errors of law committed by this Court which prejudiced CentiMark and contributed directly to the allegedly erroneous jury verdict. *See* Def.'s Mot. for New Trial [ECF No. 278]. Specifically, CentiMark

---

[3]     The court also notes that CentiMark knew that Studer Rentals owned a majority of the buildings in question as early as September 2011 but failed to move for joinder of Studer Rentals as an involuntary plaintiff and presents this motion after a trial on the merits was held and a judgment on the jury's verdict was rendered. *See* Dep. of Ed Studer [ECF No. 273-1] ("Buddy's owns the original Building No. 1. and I believe every building subsequent to that is owned by Studer Rentals.").

argues that it was error of law for the court to: (1) allow the expert testimony of Kirby Hartman who failed to produce an expert report in adherence to Federal Rule of Civil Procedure 26(a)(2)(B) or (C) and whose testimony was irrelevant under *Daubert,* and allow Buddy's to add the expert testimony of Kirby Hartman to its pre-trial statements after the close of discovery and after the deadline to file motions for summary judgment; (2) allow Mr. Studer to testify about an alleged maintenance obligation owed by Buddy's to Studer Rentals when Buddy's failed to produce a written lease evidencing the same, despite CentiMark's discovery requests for such documents; (3) allow Buddy's to enter into evidence numerous videos and photographs depicting leakage at the building, when such videos and photographs did not accurately depict the condition of the roof and building when CentiMark completed the installation of the coating system in November 2005; (4) instruct the jury erroneously by failing to articulate Buddy's affirmative duty to investigate the nature and cause of its injury; and (5) instruct the jury erroneously by instructing the jury on causes of action and claims that were prohibited by the terms of the contract; and (6) that Buddy's failed to adequately prove the amount of its damages. *See* Def.'s Mot. for New Trial [ECF No. 278] at ¶ 6. CentiMark also argues that the damages awarded to Buddy's for a replacement of the roof was a clear error of law due to the contractual terms. *See* Def.'s Br. in Supp. of Mot. for New Trial [ECF No. 279] at 3-5. Because the issue of the damages is better addressed in CentiMark's motion to mold the verdict, it will be discussed in that section *infra*. The Court will address each remaining argument in turn.

### 1. Expert Testimony of Kirby Hartman

CentiMark argues that a new trial is necessary because he failed to produce an expert report that complied with the Federal Rules of Civil Procedure and because he was an incompetent witness under *Daubert*.

As to the contested expert report, which was a one page estimate for the cost of installing a brand new roof on the buildings, CentiMark argues that it failed to conform to the standards of Rule 26(a)(2)(B) or (C) because it did not contain a statement of all opinions, facts, or data considered in forming opinions, qualifications, a list of publications or other cases where testimony was offered, or a curriculum vitae. *See* Def.'s Br. in Supp. of Mot. for New Trial [ECF No. 279] at 6. CentiMark seeks sanctions under Fed. R. Civ. P. 37(c)(1) that the witness's testimony be stricken, as he should not have been permitted to testify. Further, CentiMark argues that Hartman was not a qualified expert under *Daubert* because his report lacked a sufficient basis in fact, technical knowledge, or other trait that would deem the report and testimony worthy of belief. *Id.* at 7. Lastly, CentiMark argues that Buddy's untimely disclosed Hartman as an expert witness in violation of Federal Rules of Civil Procedure 26(a)(1)(A)(i), 26(a)(2)(D) and 26(e)(1)(A). *Id.* at 10.

Buddy's responds that the Court properly admitted Hartman's testimony because he is a qualified roofing contractor with twenty-five years of roofing experience who testified only on the cost to replace the roof panels, and defendant deposed Hartman eleven months before trial, so it suffers no prejudice. Pl.'s Br. in Op. of Def.'s Mot. for New Trial [ECF No. 296] at 6.

First and foremost, CentiMark's arguments were the subject of two previous motions by CentiMark, both rejected by this Court, therefore the Court will treat these as reconsideration motions of the Court's decisions permitting Kirby Hartman to testify. *See* Memo. Order [ECF No. 151]; Memo Op. [ECF No. 234]. As for CentiMark's *Daubert* challenge to Hartman's testimony, the Court finds that Hartman was a sufficiently qualified expert under *Daubert*.

Under Federal Rule of Evidence 702

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reasonably applied the principals and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 is not to be employed as an exclusionary rule, but rather is "meant to instruct the district courts in the sound exercise of their discretion in making admissibility determinations." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996). Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, a district court must conduct a preliminary examination of the reliability of the expert testimony by determining whether

(1) the theory or technique employed by the expert is scientific knowledge that will assist the trier of fact; (2) the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, and the existence and maintenance of standards for controlling the technique's operation and (4) the general acceptance of the theory or technique.

*Perlman v. Universal Restoration Sys., Inc.*, 2013 WL 5278211, at *7 (E.D.Pa. Sept. 9, 2013) (citations omitted). This list is not exhaustive, nor is it applicable in every case. *Kannankeril v. Terminix Intern. Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). The district court should "frequently" find "an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). Therefore, "an expert's testimony is admissible so long as the process

or technique the expert used in formulating the opinion is reliable." *Id*. at 742 (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 589 (1993)).

While CentiMark challenges Hartman's qualifications it does not specifically set forth why Hartman is unqualified to testify to the amount it would cost to replace the roof and why the court's determination to allow Hartman to testify was a clear error of law.[4]  The Court finds that Kirby Hartman was a sufficiently qualified expert to testify as to the cost to replace Buddy's roofs.  He testified that he has over twenty five years of experience in the roofing business, has experience with metal roofs and R-panels that were the subject of the litigation, visited Buddy's roof and provided an estimate of the cost to replace the roof to a reasonable degree of professional certainty. *See* Tr. [ECF No. 305] at 54-58.  Additionally, CentiMark's argument as to Hartman's expert report only challenges the report due to its brevity.  However, Hartman was asked to give his opinion as to what it would cost to replace the roof and he provided an estimate reflecting the same.  Seemingly, CentiMark's arguments as to the exclusion of Hartman's testimony and report relate more to the "weight to be given" to his testimony and not specifically the admissibility of such evidence. *Holbrook*, 80 F.3d at 782.  Expert witnesses may be competent to testify although they may not be the "best" qualified, and who is "best qualified is [a] matter of weight upon which reasonable jurors may disagree." *Id*.  Hartman was a qualified expert under *Daubert* and his report reflecting the cost to replace the roof was proper, therefore CentiMark's *Daubert* motion to exclude Hartman's testimony is denied.

Additionally, CentiMark argues that Buddy's untimely disclosed Hartman as an expert witness.  CentiMark's argument has already been addressed by this Court in the disposition of a motion to strike Hartman as an expert witness. *See* Memo. Op. [ECF No. 151].  The Court found

---

[4]     The Court also notes that at the *Daubert* hearing, no expert, including Kirby Hartman, was presented to the Court for purposes of challenging their qualifications.

that while Buddy's violated Rule 26(e) by not disclosing Hartman as an expert witness until after the close of discovery, "such conduct [did] not compel this Court to strike the expert's testimony. Defendant suffer[ed] minimal prejudice or surprise from the inclusion of the witness[]; such prejudice [was] cured by re-opening discovery[,] . . . allowing the testimony [did] not disrupt the orderly and efficient management of the trial" and there was no evidence of bad faith on behalf of Buddy's. *Id*. at 6. CentiMark simply regurgitates the same arguments it set forth in its motion to strike and offers no reason why the Court's previous finding was an error of law or otherwise appropriate for this Court to reconsider. CentiMark simply asks this Court to relitigate the issues this Court has already addressed. Accordingly, CentiMark's motion to strike the testimony of Hartman due to Buddy's failure to timely designate him as an expert witness is denied.

## 2. Studer's Testimony Regarding Maintenance Obligation

CentiMark argues that Buddy's offered no documentary evidence to show that Buddy's had any interest in the buildings' roofs, that the Studer Rentals' roof destruction claim was assigned to Buddy's, or that Buddy's had some contractual duty to Studer Rentals to maintain and keep the roof in good condition. Def.'s Br. in Supp. of Mot. for New Trial [ECF No. 279] at 7. CentiMark further argues that because no documents evidencing Buddy's interest in the building were produced, testimony about the contents of such documents is inadmissible hearsay and the Court erroneously allowed hearsay testimony to remedy a critical deficiency in Buddy's case. *Id*. at 7-8. As such, CentiMark argues that it should be granted a new trial without the hearsay evidence.

Buddy's responds that Studer competently testified that Buddy's "rents the buildings from Studer Rentals and, by agreement, Buddy's has assumed the obligation to keep the buildings in good repair. In the execution of that obligation, Buddy's obtained the hail damage

insurance used to pay for CentiMark's repair. . . . Buddy's further has a possessory interest in the buildings by virtue of the lease agreement it has with Studer Rentals." Pl.'s Br. in Op. of Def.'s Mot. for New Trial [ECF No. 296] at 7.

As a preliminary matter, Buddy's produced the lease in question as an exhibit to its memorandum of law in opposition to defendant's motion for summary judgment. *See* Studer Rentals Lease Agreement [ECF No. 127-9]. Moreover, because the court has already found that this court does not lack subject matter jurisdiction and CentiMark's argument that Studer Rentals should have been joined as a necessary party is untimely, additionally, this motion for a new trial premised on these same arguments is denied. Furthermore, whether Buddy's has standing to bring these claims is a legal question properly decided by the Court. *See In re School Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990). There was no factual dispute as to who owned the buildings that would necessitate a jury finding. Therefore, the alleged failure of Buddy's to enter the lease into evidence, and Studer's testimony as to the assignment of the interest in repairing the roof has no bearing on the outcome of the jury's verdict. Therefore, the purported lack of documentary evidence is not a valid basis for granting a new trial, setting aside the jury's verdict or otherwise disturbing the judgment. Accordingly, CentiMark's motion is denied in this respect.

### 3. Video and Photographic Evidence of Buildings

CentiMark reiterates its argument in its motion in limine as to the video and photographic evidence of the buildings shown by Buddy's and argues that the probative value of the evidence was substantially outweighed by a danger of unfair prejudice, and confused or misled the jury. Def.'s Br. in Supp. of Mot. for New Trial [ECF No. 279] at 7-8. CentiMark argues that such evidence was not relevant as it depicted the roofs six years after the application of the roof

coating material and was prejudicial because it improperly conjured sympathy for Buddy's from the jurors. *See id.* at 8. The Court will treat this as a motion for reconsideration of this Court's Order allowing said evidence.

The court has already held that any prejudice that may occur based on these photographs would be remedied by a limiting instruction to this effect. The Court held that

> the photographs and videos are not prejudicial to CentiMark because the roof is still in its warranty to this date, and there is no evidence that Buddy's or a third party has explicitly tampered with the roof. Any prejudice that the photographs and videos are dated or do not show the roof at the time of completion and conjure sympathy for Buddy's can be remedied with a limiting jury instruction to that effect.

Memo. Op. and Order [ECF No. 234] at 23. Notably, CentiMark does not argue that the Court failed to issue the limiting instruction. In its final jury instructions, the jurors were instructed not to be influenced based upon sympathy. *See* Tr. [ECF No. 300] at 15, 33 ("Do not let bias, sympathy or prejudice influence your decision in any way. Our system of law does not permit juror to be governed by sympathy, prejudice or public opinion"; "you may not award damages based on sympathy, speculation or guesswork.").

Because the trial court is given broad discretion to determine the admissibility of evidence, this Court declines to re-decide what it has already determined, whether rightly or wrongly. *See generally Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). As such, CentiMark's motion in this regard is denied for the same reasons set forth in the Court's memorandum opinion. *See* Memo. Op. and Order [ECF No. 234] at 21-23.

### 4. Erroneous Jury Instructions

CentiMark argues that the court issued erroneous jury instructions by failing to properly instruct the jury of Buddy's affirmative duty to investigate its claim and it should have instructed

the jury that if it found that CentiMark was responsible for the roof leaks, that it was to order CentiMark to fix the leaks and not pay damages for total replacement.

Generally, where a party seeks a new trial based on legally defective jury instructions, the court must consider "whether, taken as a whole, the instruction properly apprised the jury of the issues and applicable law." *Donlin v. Phillips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009) (citation omitted). The district court has "substantial discretion with respect to specific wording of jury instructions and need not give [a] proposed instruction if essential points are covered by those that are given." *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 127 (3d Cir. 2003) (citation omitted); *Donlin*, 581 F.3d at 79 ("The trial judge is permitted considerable latitude to summarize and comment upon the evidence, provided that the jury is neither confused or misled."). A district court abuses their discretion in this manner "if the instruction was capable of confusing and thereby misleading the jury." *Id.* at 126 (citation omitted).

### i. Buddy's Affirmative Duty to Investigate its Claim

CentiMark first argues that the Court erred by not instructing the jury of Buddy's affirmative duty to investigate its claim. Specifically, CentiMark argues it was error for the Court to not instruct the jury that: "Fairness requires that an individual who believes he has been wronged have a sufficient period of time to recover from his injury, if any, *investigate* the circumstances surrounding a potential claim and decide whether legal action is warranted." Def.'s Br. in Supp. of Mot. for New Trial [ECF No. 279] at 9 (emphasis in original) (quoting *Johnson v. Stuenzi*, 696 A.2d 237, 242 (Pa. Super. Ct. 1997)). CentiMark argues that "[h]ad the jury been properly instructed on the duty to investigate as part of the 'exercise of reasonable diligence,' the jury would have decided that Buddy's failed to investigate, and accordingly,

failed to exercise reasonable diligence, and it would have found in favor of CentiMark on the statute of limitations question." *Id*. at 9.

As to the statute of limitations question, the Court instructed the jury as follows:

> Buddy's was required to bring any claims arising out of or related to the contract within one year after it discovered its claims, or within one year that its claims in the exercise of reasonable diligence, should have been discovered.
>
> The phrase, reasonable diligence, is not an absolute standard. Instead, reasonable diligence is an objective test that is sufficiently flexible to take into account the differences between persons, their knowledge and, in particular, their experience and their capacity to meet certain situations and circumstances confronting them at all times.
>
> The phrase, reasonably should have been discovered, imposes a duty upon Buddy's to exercise only reasonable diligence to discover that it has been injured and by what cause.
>
> Under the reasonable diligence test, you must evaluate Buddy's actions to determine whether it exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own.
>
> Only if you find a defect in workmanship or materials provided by CentiMark caused continuing leaking of the roofs, then you must determine when Buddy's actually discovered or reasonably should have discovered that the continued leaking was caused by the defect in workmanship or materials. We will, therefore, ask you to determine when Buddy's actually discovered or reasonably should have discover[ed] that the leaks were caused, if that is true, by CentiMark's defective workmanship or materials.
>
> Buddy's contract with CentiMark requires CentiMark to apply a waterproofing material to Buddy's roof. Buddy's alleges that CentiMark breached the contract by providing defective material because the acrylic coating was not, in fact, a waterproofing material.
>
> Buddy's argues that it did not know that the coating material was not waterproofing material until its consultant told Buddy's that it was not a waterproofing material on June 1, 2009. If you find that CentiMark breached the contract because it failed to coat Buddy's roofs with a waterproofing material, you must determine when Buddy's could have discovered the breach. CentiMark contends that Buddy's knew or should have known of the alleged defects much earlier.

Tr. [ECF No. 300] at 33-34.

Because a court has substantial discretion with respect to a jury instruction's specific wording, the Court finds that the jury instruction with regard to Buddy's reasonable diligence in ascertaining its injury and its cause was clear and not capable of confusing or misleading the jury. Further, taking this jury instruction as a whole, it "properly apprised the jury of the issues and the applicable law." *Donlin*, 581 F.3d at 78 (citing *Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)). The Court's omission to instruct the jury of Buddy's to undertake an "investigation" of the circumstances is encompassed in this Court's instruction on reasonable diligence, *i.e.*, that Buddy's had a duty to exercise reasonable diligence "to discover that it has been injured and by what cause." Tr. [ECF No. 300] at 33. Accordingly, CentiMark's motion for a new trial for this reason is denied.

### ii. *Causes of Action Prohibited by Contract*

CentiMark next argues that Buddy's claims for breach of contract and breach of the duty of workmanlike performance were prohibited by the terms of the contract because the contract stated that "all causes of action except for enforcement of the Warranty are expressly disclaimed, as are all remedies other than repair of leaks by CentiMark." Def.'s Br. in Supp. of Mot. for New Trial [ECF No. 279] at 9-10. Therefore, the Court should have instructed the jury that if it found that CentiMark was responsible for the roof leaks, that it was to order CentiMark to fix the leaks, and not pay damages for the total replacement of the roof. *Id*.

CentiMark's argument that the Court erroneously instructed the jury "by instructing it at all[,]" *id*. at 9, is essentially an argument for judgment as a matter of law. CentiMark's argument has already been determined by this Court. Additionally, CentiMark does not point to any specific jury instruction which it claims was erroneous. This Court finds that the jury

instructions were proper and apprised the jury of the issues and applicable law.  Specifically, the

Court instructed the jury:

> As you have heard throughout the course of the trial, the contentions of the parties are as follows.
>
> Buddy's claims that CentiMark has breached the contract between it and CentiMark by failing to apply an agreed upon waterproofing system to its roof and defectively repairing the leaks that occurred because of faulty material[s] and/or workmanship and after applying the coating.
>
> CentiMark argues that it properly installed the coating and the materials were proper for the job completed, but that the coating failed because Buddy's buildings were poorly designed and structurally deficient, such that the roof panels expanded and contracted, allowing openings in the panels and condensation and rain to enter the roof and cause the leaks.
>
> I will first instruct you on Buddy's breach of contract claim.
>
> A contract is a legally enforceable agreement between two parties who have promised to do or refrain from doing some unlawful act.  In this case, there was no dispute that Buddy's and CentiMark entered into a contract for CentiMark to perform services on Buddy's roofs.
>
> A breach of contract occurs when a party to the contract fails to perform any contractual duty or violates an obligation, engagement, or duty, and that breach is material.  A breach does not have to be defined in a contract and not every nonperformance is to be considered a breach of the contract.
>
> If you find that the nonperformance of that contractual obligation was immaterial, and that the contract was substantially performed, you must find a breach of contract has not occurred.
>
> I have mentioned that to find a breach of contract occurred, you must find that the breach was material.  In deciding whether a breach is material, you must consider the following factors.  The extent to which Buddy's will be deprived of the benefit it is reasonably expected; the extent to which Buddy's can be adequately compensated for that party of the benefit of which it will be deprived; the extent to which CentiMark's failure to perform or to offer to perform will cause Buddy's to sustain injuries; and the extent to which the behavior of CentiMark failing to perform or offer to perform compares with the standards of good faith and fair dealing.
>
> Here, Buddy's claims CentiMark breached the contract in two different ways.  First, CentiMark promised Buddy's it would apply a waterproofing system to Buddy's roofs and, second, that

CentiMark promised that it would repair any leaks resulting from the defects in materials and/or workmanship.

Buddy's must prove by a preponderance of the evidence, meaning that it is more likely than not, that CentiMark breached these duties imposed by the contract.

The contract between Buddy's and CentiMark stated that CentiMark would apply a waterproofing roofing system to Buddy's roof. The Court ha[s] already determined that the term, waterproofing material, means a water-tight barrier.

You must find a breach of contract if you find that CentiMark did not apply an appropriate waterproofing system, or that CentiMark did not repair the leaks that were caused by defects [in] its materials and/or workmanship.

A defect in workmanship is defined as the faulty or defective execution of making or doing something. A defect in materials is defined as a fault, flaw, or irregularity that causes weakness, failure, or inadequacy in form or function.

CentiMark argues that it did not breach the contract and claims that the continued leaking of Buddy's roof is the result of the improper manner in which the building was designed and constructed for which it is not responsible and the leaking is caused by the movement of the panels or possible condensation in the building.

It is for you, the jury, to decide first, whether CentiMark applied a waterproofing material, and second, whether any leaking in the roof after CentiMark performed its repair work was caused as a result of a defect in either the workmanship[,] materials, or both, provided by CentiMark.

The fact that the roof continued to leak after CentiMark attempted to repair it does not necessarily mean that the continuing leaking resulted from a defect in workmanship or material.

The fact that CentiMark attempted to repair Buddy's roof coating cannot be used as evidence to show that CentiMark breached the contract. The fact that a company takes remedial measures upon the occurrence of some event is not evidence that the business caused that event. Evidence of subsequent remedial measures is not admissible to prove liability or culpability of prior conduct.

If you find it is more likely than not that CentiMark did not apply a waterproofing material to the roof, then you must find that CentiMark breached the contract.

In a similar manner, if you find it is more likely than not that the leaking of the roof that occurred as CentiMark performed its repair work was caused as a result of a defect in either the workmanship or material, or both, then you must find that CentiMark breached its contract with Buddy's. However, if you

find that the improper design or construction of the roof caused the defects and the leaks that then occurred, you must find that CentiMark did not breach its contract.

Only if you have determined that CentiMark breached the contract with Buddy's by either failing to apply a waterproofing system to the roof thereby causing Buddy's to continue to experience leaking or by failing to repair the leaks that were caused as a result of a defect in either its workmanship or materials may you determine what amount of damages are owed to Buddy's as a result of the breach.

Tr. [ECF No. 300] at 27 – 31.

The Court has held that the contract provisions cited by CentiMark "does not bar Buddy's from bringing in evidence of damage actually caused by CentiMark[,]" Mem. Op. and Order [ECF No. 234] at 10, and additionally holds, *infra*, that it was proper for the court to enter judgment on the jury verdict. By extension, this Court did not err by allowing the jury to decide this issue. CentiMark simply asks this court to relitigate issues already decided. Accordingly, CentiMark's motion is denied.

### 5. *Damages Not Proven by the Evidence*

Lastly, CentiMark argues that Buddy's has not proven its damages to a reasonable certainty which demands a new trial.

In order to prove damages for a breach of contract under Pennsylvania law, the plaintiff "must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" *Ware v. Rodale Press, Inc*., 322 F.3d 218, 226 (3d Cir. 2003) (quoting *ATACS Corp. v. Trans World Communications, Inc*., 155 F.3d 659, 668 (3d Cir. 1998)). While Pennsylvania law allows "some uncertainty" in calculating damages for a breach of contract, "the plaintiff must introduce sufficient facts upon which the jury can determine the amount of damages without conjecture." *Ware*, 322 F.3d at 226 (quoting *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. Ct. 1983)).

Here, there was sufficient evidence for the jury to base its award of damages. Plaintiff presented a roofing expert, Kirby Hartman, who testified to a reasonable degree of certainty that the cost to replace the roof would be approximately $1,800,000. *See* Tr. [ECF No. 305] at 54-58. Hartman visited the buildings in question, measured the roof and provided an estimate for the "replacement of the metal roof that had the roof coating on it." *Id*. at 55. Hartman was also provided an estimate as part of his expert report as to the cost of replacing the roofing panels. *See* Hartman Roofing Inc. 9/17/2012 Estimate [ECF No. 134] at 3.

Therefore, there was enough evidence for the jury to determine the amount of damages that Buddy's was entitled amounted to $1,800,000 without guesswork or conjecture. Accordingly, CentiMark's motion for a new trial on this basis is denied.

c. *CentiMark's Motion to Mold the Verdict*

Lastly, CentiMark moves to mold the jury's verdict to reduce it to $513,000 (the original cost of the project) less the cost of the warranty repairs performed by CentiMark ($47,672) for an amount of damages totaling $465,928. CentiMark argues that (1) the law of the case mandates that the Court mold the verdict; (2) the verdict is prohibited by the parties' contract which disclaimed consequential damages, limited liability to repair of the roof and capped damages at the original cost of the roof coating system; (3) it was determined in pre-trial proceedings that any verdict in excess of the damage cap was prohibited by the contract; and (4) the jury's finding that CentiMark failed to perform in a workmanlike manner does not supersede the terms of the contract or their enforceability. *See* Def.'s Mot. for Reconsideration [ECF No. 295] at 1-2, 8.

First, CentiMark's argument that it was determined pre-trial that any verdict was subject to a damage cap is incorrect. Gleaning from the transcript, the Court did not make a ruling as to the amount of damages, nor did the parties come to a definite stipulation regarding this issue at

the pretrial conference. The entirety of the discussion on this point between the Court and counsel was as follows:

> The Court: At this juncture, what is the question that is going to the jury, or questions?
>
> Mr. Stein: The questions that are going to the jury is whether or not the Defendant breached the contract; and whether or not the Defendant breach the warranty . . . of workmanship and materials; and whether the Plaintiff filed suit within a reasonable period of time after it learned or should have learned of the defects in material and workmanship.
>
> The Court: Okay. What about as far as assessing damages if the jury is going to do that?
>
> Mr. Stein: We have a witness who was going to testify to the cost of replacing the roof, which our experts are going to testify is necessary. And so that only question is, we had discussed this earlier - -
>
> The Court: Right. The warranty says the limitation is the amount of the contract, which is a little over a half million dollars.
>
> Mr. Stein: Yes.
>
> The Court: Okay.
>
> Mr. Stein: The question was whether or not the jury should be instructed at the beginning that they are not to enter an award for more than that or whether or not we should let them make the decision and then the Court mold the verdict. I don't think that's actually been decided yet.
>
> The Court: I think the last time we kind of decided we would let the jury reach its own verdict and then we would enter a verdict capping it at the amount under the warranty. So that - - I think you raised it, Mr. Stein - - in the event of an appeal, if the jury - - if the Court concludes that the damages should not have been limited to those contained in the warranty, that the case not have to be retried.
>
> Mr. Stein: I don't know whether we actually decided because Mr. Liekar I though indicated he hadn't discussed that

with his client. Then subsequently other questions came up about, for example, if the case is appealed and if it's reversed on the fraud . . . claim, then we have a potential jury issue on damages with regard to potential punitive damages and things of that nature. So I wasn't sure whether or not we would have to retry it anyway if we won. So that's where we are - - that's where I am in any event.

        The Court:     Okay. Mr. Liekar.

        Mr. Liekar:     That's a good recitation of what we talked about. We are kind of agreeing on that last time we were here and reserved the right to talk to my client about it. Then, Mr. Stein brought up the issue, what about all the other issues, and then I wasn't really sure what the stipulation was going to be. So maybe if we could agree what the stipulation is going to be, if Mr. Stein still wants to do that, because of these other complications with the punitive damages. But I think we need to agree on the stipulation, which I guess would be something to the effect that the warranty limits the amount of damages recoverable to I think it's $550,000, but we will have the exact number, maybe we can stipulate that the jury can render its verdict, and if it's over $550,000, the Court will mold the verdict to $550,000. In other words - - there was a verdict and it was over 550. So I guess we need to maybe agree on that language in advance with the Court's approval, and then I don't know how we are going to answer those questions. It seems like they are really imponderable at this point. So maybe, I don't know, maybe we just agree that the jury is instructed that the amount of damages is limited to 550 and just avoid that future issue altogether. Because that's really speculating that there will be a verdict and it will be appealed and things of that nature.

        The Court:     But where is the harm to your client? Supposing the jury comes in with 750, we enter judgment for 550 based on the limitations of the contract - -

        Mr. Liekar:     If that's the agreement, I have no problem with that.

        The Court:     Why don't you and Mr. Stein try to work that out.

Tr. [ECF No. 235] at 4-7. The parties failed to come to a stipulation on the matter before the verdict was rendered, and the Court subsequently entered judgment on the entire verdict amount, uncapped by the contractual amount.

First and foremost, any argument that there was an "understanding" between the parties and the Court that the Court would mold a jury verdict in excess of the contract amount, and that it is the law of the case is palpably incorrect as shown from the transcript.  It is clear that no agreement or ruling had been made, but rather the parties were to discuss whether a stipulation would be necessary but failed to do so.  Accordingly, CentiMark's argument that the Court is bound to mold the verdict as based on these pre-trial discussions is denied.

CentiMark next argues that the Court has already held that the limitation of liability clause is enforceable against Buddy's and therefore it is also bound by the law of the case to mold the verdict to the contract amount. Def.'s Br. in Supp. of Mot. for Reconsideration [ECF No. 295] at 4.

Specifically, the Court held that "the limitation of liability clause is enforceable against Buddy's, and should it recover on its breach of contract claim, CentiMark is not liable for any special, incidental, or consequential damages." Mem. Op. [ECF No. 157] at 19.  However, the Court made this finding with regard to the enforceability of the limitation of liability clause, not its application.  Although this court has found that damages caused to the roof in the repair process were not consequential damages, a broader discussion on the matter is warranted here. Because a court may "refuse to infer decision on issues that were barely presented, or from summary decisions[,]" the Court will discuss whether the damages to the roof made during repairs that ultimately necessitated replacement of the roof are consequential damages disclaimed by the contract. *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n. 7 (3d Cir. 2003) (citing 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478 (2d ed. 2002)).

The Court has previously held:

> The limitation of liability clause stated "This warranty does not cover, and in no case shall CentiMark be liable for any special, incidental or consequential damages based on breach of warranty, breach of contract, negligence, strict liability, tort or other legal theory." 8/11/2006 Sales Agreement [ECF No. 4-2] at 30. The court upheld this provision as valid; however it does not bar Buddy's from bringing evidence of damages actually caused by CentiMark. *See* Mem. Op. and Order [ECF No. 157] at 19. The replacement of the roof is not a consequential damage if the repairs made by CentiMark caused such substantial damage to the roof that . . . only replacement of the entire roof would remedy the defects. Therefore, Buddy's is entitled to recoup actual damages sustained, provided they can be proven and are accepted by the jury.

Mem. Op. and Order [ECF No. 234] at 10.

Generally, "[c]ontract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed." Restatement (Second) of Contracts § 347 cmt. a (1981). Consequential damages are defined by Black's Law Dictionary as "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from that act. – Also termed indirect damages." Black's Law Dictionary (9th ed. 2009); *see also Cresci Const. Servs., Inc. v. Martin*, 64 A.3d 254, 259 (Pa. Super. Ct. 2013) ("'Consequential damages' are generally understood to be other damages which naturally and proximately flow from a breach of contract.").

While CentiMark argues that the damage to the roof while performing its repairs under the warranty are consequential damages disclaimed by the warranty, the court finds that the damage to the roof was direct damages properly awarded to Buddy's.

"The Restatement (Second) of Contracts § 347 distinguishes 'the loss in value to [the injured party] of the other party's performance caused by its failure or deficiency' – direct

damages – from 'any other loss, including incidental or consequential loss, caused by the breach,' – indirect damages." *Clark Distribution Sys. Inc. v. ALG Direct, Inc.*, 2012 WL 3686771, at *5 (M.D.Pa. Aug. 27, 2012) (citations omitted). "There is no general rule that direct damages are limited to the difference between the value of the product or service contracted for and the value of the product or service actually provided." *Wartsila NSD N.A., Inc. v. Hill Intern., Inc.*, 436 F.Supp.2d 690, 697 (D.N.J. 2006) (order vacated on other grounds by *Wartsila NSD N.A., Inc. v. Hill Intern.. Inc.*, 530 F.3d 269 (3d Cir. 2008) (citing *Applied Data Processing, Inc. v. Burroughs Corp.*, 394 F.Supp. 504, 509 (D.Conn. 1975)). *See also Foundry & Mach. Co*., 27 F.2d 234 (6th Cir. 1928); *Clark v. Ferro Corp*., 237 F.Supp. 230, 239 (E.D.Tenn. 1964).

In a substantially similar case, the owner of a building brought suit against a roofer after it had applied a roof-coating material for, *inter alia*, breach of contract because the roof leaked after the installation. *21st Century Props. Co. v. Carpenter Insulation & Coatings, Co.*, 694 F.Supp. 148, 150 (D.Md. 1988). The plaintiff sought replacement of the roof, rather than the cost to repair it, and the defendant-roofer argued that the consequential damages exculpatory clause barred the plaintiff from recovering monetary damages, because such damages were consequential. *Id*. at 152. The court found under Maryland law that "the cost of replacing the allegedly defective roofs which plaintiffs seek to recover constitutes the direct damage, not incidental damage or consequential damages, caused by the wrongs alleged." *Id*. at 152, n. 4 (citing *Correlli Roofing Co. v. Nat'l Instrument Co*., 214 A.2d 919, 921 (Md. 1965)).

CentiMark was under a duty to repair leaks caused by defective workmanship or materials. The evidence showed that this did not occur, as CentiMark in undertaking the repairs on Buddy's roof, drove thousands of ungasketed fasteners into the roof, which caused leaking in the buildings. It was undisputed, and in fact CentiMark's own expert testified, that the

ungasketed fasteners were inappropriate. *See* Tr. [ECF No. 307] at 30-31. By doing so, CentiMark breached their contract with Buddy's. The damage caused by CentiMark's use of the ungasketed fasteners were not consequential damages, but rather direct damages constituting Buddy's loss in value to its roof for CentiMark's failure to repair the roof from leaks caused by CentiMark's defective workmanship and/or materials. The court holds that the damages sought by Buddy's for the destruction of their roof are direct damages permitted under the contract, not incidental or consequential damages disclaimed by the contract. Accordingly, CentiMark's motion to mold the verdict is denied.

V.     **CONCLUSION**

For the foregoing reasons, defendant's, CentiMark Corporation's motion for judgment as a matter of law [ECF No. 270] is DENIED; CentiMark's motion for judgment as a matter of law [ECF No. 272] is DENIED; CentiMark's motion for a new trial [ECF No. 278] is DENIED; and CentiMark's motion for reconsideration of the [ECF No. 264] Order denying oral motion to mold the verdict [ECF No. 295] is DENIED.

An appropriate Order follows.


<u>**ORDER OF COURT**</u>


AND NOW, this 31st day of March, 2014, after consideration of CentiMark Corporation's motion for judgment as a matter of law [ECF No. 270], CentiMark's Motion for judgment as a matter of law [ECF No. 272], CentiMark's motion for a new trial [ECF No. 278], and CentiMark's motions for reconsideration of the [ECF No. 264] Order denying the oral motion to mold the verdict [ECF No. 295], along with briefs in support, briefs in opposition and replies thereto, it is HEREBY ORDERED as follows:

CentiMark's motion for judgment as a matter of law [ECF No. 270] is DENIED;

CentiMark's motion for judgment as a matter of law [ECF No. 272] is DENIED;

CentiMark's motion for a new trial [ECF No. 278] is DENIED;

CentiMark's motion for reconsideration of the [ECF No. 264] Order denying the oral motion to mold the verdict [ECF No. 295] is DENIED.


By the Court,

s/ROBERT C. MITCHELL
ROBERT C. MITCHELL
United States Magistrate Judge


cc:    Stanley M. Stein
       Chadd C. Colin
       John P. Liekar, Jr.